# In the United States Court of Appeals for the Seventh Circuit

### No. 25-2441

INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD.,

PLAINTIFF – APPELLEE

V.

DAN DEE INTERNATIONAL, LLC,

DEFENDANT – APPELLANT

On Appeal from the U.S. District Court
for the Northern District of Illinois

## BRIEF AND REQUIRED SHORT APPENDIX FOR DEFENDANT-APPELLANT DAN DEE INTERNATIONAL

Rex W. Manning
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

John P. Del Monaco
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

Sean T.H. Dutton
KIENBAUM HARDY
VIVIANO PELTON & FORREST PLC
280 N. Old Woodward Ave.
Birmingham, MI 48009
Telephone: (248) 645-0000

Kelli M. Mulder
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for Appellant*

November 4, 2025

**Oral Argument Requested**

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Dan Dee International, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Kirkland & Ellis LLP ; Kienbaum Hardy Viviano Pelton & Forrest LLC (revised)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Kelli M. Mulder    Date: 11/4/2025

Attorney's Printed Name:  Kelli M. Mulder

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address:  333 West Wolf Point Plaza

    Chicago, IL 60654

Phone Number: 312-862-2175    Fax Number:  312-862-2100

E-Mail Address: kelli.mulder@kirkland.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Dan Dee International, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Kirkland & Ellis LLP; Kienbaum Hardy Viviano Pelton & Forrest LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Rex W. Manning     Date: 11/4/2025

Attorney's Printed Name: Rex W. Manning

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 609 Main St., Ste. 4500

Houston, TX 77002

Phone Number: 713-836-3474     Fax Number: 713-836-3601

E-Mail Address: rex.manning@kirkland.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Dan Dee International, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Kirkland & Ellis LLP; Kienbaum Hardy Viviano Pelton & Forrest LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)       Identify all its parent corporations, if any; and

        N/A

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ John P. Del Monaco     Date: 11/4/2025

Attorney's Printed Name:  John P. Del Monaco

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address:  601 Lexington Avenue

New York, NY 10022

Phone Number: 212-446-4800      Fax Number:  212-446-4900

E-Mail Address: john_delmonaco@kirkland.com

rev. 12/19 AK

|  | Save As | Clear Form |
|--|--|--|

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Dan Dee International, LLC

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Kirkland & Ellis LLP; Kienbaum Hardy Viviano Pelton & Forest LLC

(3)  If the party, amicus or intervenor is a corporation:

    i)  Identify all its parent corporations, if any; and

    N/A

    ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Sean T.H. Dutton      Date: 10/31/2025

Attorney's Printed Name:  Sean T.H. Dutton

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ] **No** [✔]

Address:  280 N. Old Woodward Ave., Suite 400

Birmingham, MI 48009

Phone Number: (248) 645-0000      Fax Number:  (248) 458-4581

E-Mail Address: sdutton@khvpf.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................... ii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUE ...............................................................................3

INTRODUCTION ....................................................................................................4

STATEMENT OF THE CASE ................................................................................6

      A.     Background ...................................................................................6

      B.     Proceedings Below .....................................................................8

SUMMARY OF ARGUMENT ..............................................................................16

STANDARD OF REVIEW ....................................................................................18

ARGUMENT ..........................................................................................................19

I.     The District Court Erred In Holding That Dan Dee Materially Breached The Contract Because Dan Dee Offered An Adequate Substitute. ...........................................................19

CONCLUSION .......................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Bakov v. Consol. World Travel, Inc.,*
  68 F.4th 1053 (7th Cir. 2023)............................................................ 18, 26, 27

*Carr v. Runyan,*
  89 F.3d 327 (7th Cir. 1996).........................................................................18

*Chi. Bd. of Educ. v. Substance, Inc.,*
  354 F.3d 624 (7th Cir. 2003)........................................................................2

*Daniels v. Hughes,*
  147 F.4th 777 (7th Cir. 2025)......................................................................18

*Eckhardt v. Idea Factory, LLC,*
  2021 IL App (1st) 210813, 456 Ill. Dec. 214, 193 N.E.3d 182 ......................25

*Green v. Warden, U.S. Penitentiary,*
  699 F.2d 364 (7th Cir. 1983).......................................................................15

*In re Motorola Sec. Litig.,*
  644 F.3d 511 (7th Cir. 2011)........................................................................18

*Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.,*
  55 F.4th 517 (7th Cir. 2022)........................................................................19

*Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.,*
  352 Ill. App. 3d 160, 287 Ill. Dec. 267, 815 N.E.2d 911 (2004)....................25

*Prod. & Maint. Emps. Loc. 504 v. Roadmaster Corp.,*
  954 F.2d 1397 (7th Cir. 1992)......................................................................18

*Rubloff CB Machesney, LLC v. World Novelties, Inc.,*
  363 Ill. App. 3d 558, 300 Ill. Dec. 464, 844 N.E.2d 462 (2006)............. *passim*

*Sahadi v. Continental Ill. Nat'l Bank & Tr. Co. of Chi.,*
  706 F.2d 193 (7th Cir. 1983)................................................................ 19, 20, 27

*U.S. Patent & Trademark Office v. Booking.com B. V.,*
  591 U.S. 549 (2020)............................................................................. 22, 27

*William Blair & Co. v. FI Liquidation Corp.,*
    358 Ill. App. 3d 324, 294 Ill. Dec. 348, 830 N.E.2d 760 (2005)......................19

*Wilson v. Wilson,*
    46 F.3d 660 (7th Cir. 1995) .................................................................................18

**Statutes & Rules**

28 U.S.C. § 1291.........................................................................................................2

28 U.S.C. § 1332......................................................................................................1, 2

28 U.S.C. § 1441..........................................................................................................1

7th Cir. R. 28 ...................................................................................................... 1, 2, 3

Fed. R. App. P. 4 .........................................................................................................3

## JURISDICTIONAL STATEMENT

Defendant-Appellant Dan Dee International, LLC ("Dan Dee") submits the following jurisdictional statement. *See* Seventh Circuit Rule ("Cir. R.") 28(a).

Plaintiff-Appellee International Star Registry of Illinois, Ltd. ("ISR") initially filed this action in the chancery division of the Circuit Court of Cook County Illinois, raising five state-law causes of action against Dan Dee, and serving the complaint on Dan Dee on May 8, 2024. *See* R. 1-1. On June 7, 2024, Dan Dee removed the case to the U.S. District Court for the Northern District of Illinois under 28 U.S.C. § 1441, based upon diversity jurisdiction. R.1. ISR is an Illinois Corporation with its principal place of business located in Northbrook, Illinois. And Dan Dee is a Delaware LLC with its principal place of business located in St. Petersburg, Florida and its only member—Dan Dee International Holdings, Inc.—is incorporated in Delaware with its principal place of business also located in Florida. Thus, there is complete diversity between the parties. 28 U.S.C. § 1332(a)(1). Moreover, ISR's complaint exceeded the $75,000 amount-in-controversy threshold for diversity jurisdiction, as it sought lost profits of $23,928 and $230,000, in addition to hundreds of thousands in alleged loss of sales and certain other damages. 28

U.S.C. § 1332(a). Therefore, the district court had jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1332 and 1441. *See* Cir. R. 28(a)(1).

This Court has appellate jurisdiction because Dan Dee appeals from a final decision of the district court pursuant to 28 U.S.C. § 1291. *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 626 (7th Cir. 2003). The parties initially settled this matter, executing a Release and Settlement Agreement on December 23 and 24, 2024. Rs. 40, 61. Before full dismissal of the case, however, ISR filed a Motion to Enforce the Settlement Agreement. R. 43. The district court referred that Motion to the magistrate judge, R. 46, who ultimately issued a Report and Recommendation, proposing that ISR's Motion be granted and that it be awarded $6,500 in attorney fees, R. 57. Dan Dee filed objections to the Report and Recommendation by way of a Motion to Modify the Report and Recommendation, R. 60, which the district court denied, R. 72. Then, on July 18, 2025, the district court entered a minute-entry final judgment dismissing the case. R. 77. Thus, the district court's minute-entry Order dismissing the case resolved with finality all issues before the court, and there remains no ongoing litigation in the district court. Cir. R. 28(a)(2)(i).

Dan Dee timely filed its Notice of Appeal on August 18, 2025, R. 78, within all applicable deadlines, Fed. R. App. P. 4(a)(1); Cir. R. 28(a)(2)(iv).

## STATEMENT OF THE ISSUE

1. Whether the magistrate judge and district court erred in concluding that Dan Dee providing ISR the website "wishuponastargifts.com," rather than the nearly identical website "wishuponastargift.com," constituted a material breach of the parties Release and Settlement Agreement.

# INTRODUCTION

This appeal arises from a determination by the trial court on a motion to enforce a settlement agreement that appellant, Dan Dee, breached that agreement by delivering to appellee, ISR, the rights to a website with the domain "wishuponastargifts.com" instead of the domain "wishuponastargift.com," as written in the settlement agreement. The crux of the appeal thus concerns a single additional letter converting the noun "gift" to its plural form. The trial court committed error by finding a material breach despite that, on their face, there is no meaningful difference between the two website domains and ISR presented no evidence to suggest otherwise.

Below, ISR sued Dan Dee in the aftermath of their failed commercial venture to manufacture and sell plush toys that purchasers could later choose to associate with a star by utilizing ISR's star registry. In settling that dispute, Dan Dee agreed to pay ISR $140,000; assign to ISR the trademark "WISH UPON A STAR," which Dan Dee had registered in connection with the parties' failed venture; and transfer to ISR certain artwork files and the rights to a website domain—"wishuponastargift.com"—that Dan Dee had acquired to support the venture. Unfortunately, prior to entering into the

settlement agreement, Dan Dee had unknowingly lost its rights to that particular website domain. Thus, after the settlement was inked, Dan Dee fulfilled all of its financial and other commitments and told ISR that it was transferring its ownership rights to an equivalent website domain— "wishuponastargifts.com"—that it had also set up at the outset of the parties' venture. Dan Dee told ISR that it had updated the packaging artwork and other files to utilize this website and that it would voluntarily pay to replace the small amount of packaging and inventory that had already been produced with the other website domain. But ISR unreasonably rejected this solution and moved to enforce the parties' settlement agreement, claiming that the one-letter difference in the website domains prevented it from selling new plush toys and caused it to suffer hundreds of thousands of dollars in damages.

The trial court granted ISR's motion but awarded it only the contractually required relief—$6,500 for attorneys' fees. In granting ISR's motion, however, the district court failed to consider and address Illinois law related to materiality of a contractual breach. That was error because every single relevant factor, as well as the context surrounding the parties' settlement, dictates that Dan Dee's provision of the plural domain name

instead of the singular one was immaterial, and ISR received the full benefit of the bargain it struck in the settlement.

Specifically, ISR received: the cash consideration promised by Dan Dee; plus the rights to Dan Dee's trademark, WISH UPON A STAR, that would allow ISR to make and sell plush toys on its own; plus all of the artwork and an equivalent website domain; and Dan Dee even offered to cover the *de minimis* costs for replacing the existing packaging and replacing hangtags on the small amount of existing inventory. Nevertheless, even though ISR presented no evidence that Dan Dee acted in bad faith or that there is any difference in the two website domains, the district court still concluded that the one-letter-change domain name resulted in a material breach. That was error, and the Court should reverse and remand with instructions to deny the motion to enforce and to dismiss the case.

**STATEMENT OF THE CASE**

### A.    Background

This case arises out of a commercially unsuccessful licensing agreement between Dan Dee and ISR, which failure was largely due to ISR's refusal to pay Dan Dee for its efforts under the agreement. ISR, as its name suggests, maintains the International Star Registry, an unofficial database

which allows customers to purchase the right to name a star, often as a gift or memorial. SA at 22–23.[1] And Dan Dee is a toy manufacturer. *Id.* Consistent with the parties' respective business models, in 2021, they entered into a contract to produce, sell, and distribute plush stuffed toys, e.g., "teddy bears." *See* SA at 23. Under this Agreement, Dan Dee was responsible for manufacturing the plush toys and ISR was responsible for allowing use of its International Star Registry and related trademarks and obtaining sales contracts, for which it would receive some measure of royalty payments. *See id.* The parties intended these plush toys to be branded "Wish Upon A Star" and planned to offer customers the ability to name a star in the registry after their plush toy, through a website connected to ISR's registry. *Id.* To that end, Dan Dee was tasked with obtaining the domain name "wishuponastargift.com," which would correspond to the website that allowed customers to name a star after the plush toy they had purchased. R. 60 at 2.[2]

---

[1] "SA at __" refers to the required Short Appendix attached to this Brief.
[2] "R. __ at __" refers to the docket entries in the lower court record.

The parties' relationship soon deteriorated. ISR had failed to pay Dan Dee for a large number of plush toys that Dan Dee had produced up front for the deal. And ISR also raised several issues with Dan Dee's efforts within the joint endeavor that ISR later claimed as breaches of contract. For example, ISR claimed that Dan Dee failed to provide required product safety certifications (*i.e.,* a Certificate of Conformity under the Consumer Product Safety Act) with the toys it delivered, rendering them unsellable through channels such as Walmart and Amazon. SA at 23. ISR alleged that Dan Dee disabled the jointly created website, shutting down a key component of the product's consumer experience. *Id.* And it also accused Dan Dee of backing out of a lucrative sales opportunity with QVC, causing ISR to miss the QVC sales event and other retail opportunities SA at 25–26. As a result, ISR stopped any payments on Dan Dee's invoices. SA at 24.

**B.  Proceedings Below**

Based upon these various accusations, on April 19, 2024, ISR filed a five-count complaint in Cook County Circuit Court asserting (1) breach of contract pertaining to the allegedly deficient products, (2) tortious interference with business relations and breach of contract, (3) corporate defamation/slander, (4) breach of the QVC contract, and (5) a claim seeking

mandamus or an injunction. SA at 23–28. In its Complaint, ISR claimed that Dan Dee's actions deprived it of hundreds of thousands or even millions of dollars in lost profits, based upon past success ISR had seen in selling products on QVC, as well as additional sales on platforms like Amazon and Walmart.com. SA at 24–28. Dan Dee removed that action to the U.S. District Court for the Northern District of Illinois on the basis of diversity jurisdiction, within all applicable deadlines to do so. *See* R. 1.

After removal, Dan Dee moved to dismiss ISR's Complaint for failure to state a claim under Rule 12(b)(6). R. 12. After that Motion was fully briefed by the parties, *see* Rs. 13, 19, 24, 26, 27, but before any ruling, the district court referred the case to the magistrate judge for, among other things, "settlement matters." R. 31 (minute entry); *see also* Rs. 33–35, 38–40 (minute entries).

Settlement negotiations before the magistrate judge included numerous meetings and calls between the parties, ultimately culminating in a settlement conference on December 17, 2024. R. 40 (minute entry). At that conference, the parties successfully settled the dispute, leaving only finalization of the agreement encompassing the negotiated terms. *Id.*

The parties thereafter negotiated final terms and executed a written Release and Settlement Agreement on December 23 and 24, 2024. SA at 10–

11. Largely seeing this dispute as akin to a nuisance suit, Dan Dee agreed to settle the matter to avoid wasting extensive time and resources. *See* SA at 4. To that end, Dan Dee agreed to pay ISR $140,000 (significantly below ISR's initial claims for hundreds of thousand or even millions in damages) and to "transfer and assign all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code" (as well as certain trademark and packaging assets) to ISR within 30 days of execution. SA at 5. The Agreement also contained a fee-shifting provision, awarding any prevailing party in an action to interpret or enforce the agreement reasonable attorneys' fees, costs, and expenses. SA at 7.

Following the execution of that Release and Settlement Agreement, Dan Dee proceeded to transfer to ISR the bulk of the assets the Agreement required it to provide. Indeed, Dan Dee transferred the $140,000 settlement payment, all trademark rights to WISH UPON A STAR (U.S. Serial Number 90613521), and "all artwork, art files, promotional materials, and designs for the packaging and tagging of the" plush toys. *See* SA at 5. Unfortunately, Dan Dee realized that it had inadvertently failed to retain its rights in wishuponastargift.com, so it could not transfer and assign to ISR any rights to that domain, website, and URL, because Dan Dee no longer owned it and

a third party had purchased those rights. *See* SA at 19. But Dan Dee had renewed and retained its interest in another equivalent website and URL related to the WISH UPON A STAR mark—wishuponastargift<u>s</u>.com. R. 60 at 2.

Critically, the wishuponastargifts.com website was (and is) identical in content and functionality to the original site; the only difference is a single letter, the added "s" in the URL. *Id.* at 5–6. To ensure a seamless transition for ISR, Dan Dee also updated all the previously delivered digital files so that the packaging artwork, hangtags, and QR code now utilized wishuponastargifts.com instead of the defunct address. *Id.* at 2. In other words, despite the one-letter change in the URL, from a consumer's perspective the product could be marketed and used with the substitute website just as originally intended. *Id.* at 5. Dan Dee also made diligent efforts to reclaim the original wishuponastargift.com domain from the third party—although those attempts were ultimately unsuccessful. SA at 12. And Dan Dee took concrete steps to transfer the substitute wishuponastargifts.com domain to ISR's control. For example, Dan Dee's representative sent ISR an email attaching the credentials for the GoDaddy account and designating ISR as a co-owner/administrator of the new

website, so that ISR could assume full ownership of the domain. SA at 16. Dan Dee assured ISR that it stood ready to finalize the transfer of wishuponastargifts.com at ISR's convenience and to assist with any remaining issues, including offering ISR various additional concessions to ensure that it would be in an equal-or-better position with the wishuponastargifts.com website moving forward. SA at 12. Despite Dan Dee's comprehensive proposal, ISR has at all times rejected the offer and attempts at conciliation. *See* R. 62 at 4.

Instead, only a few days after the close of the Agreement's 30-day period for Dan Dee to transfer all assets, ISR moved to enforce the Release and Settlement Agreement, seeking hundreds of thousands of dollars in supposed lost sales. R. 43 at 1. Again, the district court referred the Motion to the magistrate judge. *See* R. 45 (minute entry).

The magistrate judge initially pursued renewed settlement negotiations between the parties, to no avail. After numerous email and oral communications with counsel between January 30 and March 13, 2025, the magistrate judge concluded the parties were at an impasse and proceeded to issue a Report and Recommendation on ISR's Motion to Enforce the

Settlement Agreement. *See* SA at 18.[3] The Report and Recommendation concluded that Paragraph 3 of the Settlement Agreement—requiring transfer of the wishuponastargift.com domain (among other IP)—was a material term that Dan Dee breached by failing to transfer the specified domain to ISR. SA at 18–19. It also noted that Dan Dee had, in fact, transferred an alternative domain, wishuponastargifts.com, to ISR, but concluded that Dan Dee had still not delivered exactly what was promised in the agreement. SA at 19. As for relief, the magistrate judge's Report and Recommendation proposed that ISR's Motion to Enforce be granted, and that pursuant to the Settlement Agreement's fee-shifting provision, Dan Dee be ordered to pay ISR $6,500 toward the attorneys' fees incurred in bringing the Motion by ISR's attorneys. SA at 19–20. That amount represented the fees that ISR had accumulated through February 19, 2025, in attempting to enforce the settlement, which the magistrate judge found reasonable; the R&R declined to award additional fees that ISR accrued after that date, finding those later expenses unnecessary. SA at 20.

---

[3] The magistrate judge initially issued a simple Order granting ISR's Motion to Enforce but later vacated that Order and issued a subsequent Report and Recommendation. *See* Rs. 53–54.

Dan Dee filed objections to that Report and Recommendation, styled as a "Motion to Modify the Report and Recommendation." R. 60. In substance, Dan Dee objected to the magistrate judge's characterization of its breach as "material." R. 60 at 1. Dan Dee urged the district court to adopt the Report and Recommendations with an important modification: a finding that Dan Dee's technical breach (providing wishuponastargifts.com instead of wishuponastargift.com) was not a material breach of the settlement R. 60 at 1, 5. In support, Dan Dee argued that the substitute domain was functionally identical to the original and that there was "simply no meaningful difference between wishuponastargift.com and wishuponastargifts.com" aside from the plural "s." R. 60 at 5. Dan Dee pointed out that it had provided an equivalent website with the "same design and functionality" and that ISR would suffer no material harm from the one-letter variation. R. 60 at 5–6.

On May 27, 2025, the district court entered a minute-entry order adopting the magistrate judge's Report and Recommendation in full. SA at 2–3. The court conducted a de novo review of whether Dan Dee's breach was material and ultimately agreed with ISR's position that it was. SA at 2. Despite the lack of any supporting evidence, the court accepted ISR's

assertion that a one-letter difference in a URL could have significant consequences and that ISR had substantial inventory at stake. *Id.* The court thus held that Dan Dee's failure to transfer wishuponastargift.com *did* constitute a material breach of the settlement agreement and granted ISR's motion to enforce, ordering Dan Dee to specifically perform the settlement (to the extent possible) and to pay $6,500 in attorneys' fees pursuant to the Settlement Agreement's enforcement clause. SA at 2–3. The district court thereafter entered a minute-entry final judgment, closing the case. SA at 1.

Only three days after the district court below adopted in full the magistrate judge's Report and Recommendation, on May 30, 2025, ISR filed another lawsuit against Dan Dee in the Northern District of Illinois, attempting to further litigate the alleged breach of the Release and Settlement Agreement. SA at 30–36.[4] In this follow-on lawsuit, ISR specifically brings several claims arising out of Dan Dee's alleged "material

---

[4] The Court is permitted to take notice of proceedings within the federal court system, insofar as they have a direct relation to the matters at issue in this appeal. *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983). Thus, the Court may take judicial notice of, and consider, all of the filings in ISR's second lawsuit against Dan Dee, which are located on PACER in *International Star Registry of Illinois, Ltd. v. DanDee International, LLC*, No. 1:25-cv-6086 (N.D. Ill.).

breach of the Settlement Agreement." SA at 32. In other words, ISR continues to litigate the domain-name issue to this day, extending the fight to a second theater.

**SUMMARY OF ARGUMENT**

The magistrate judge and district court below failed to properly determine whether Dan Dee's alleged breach of the parties' Release and Settlement Agreement was material. It is black-letter Illinois law that an immaterial breach cannot support a breach-of-contract claim or excuse nonperformance by the other party. And whether a breach is material under Illinois law requires a court to consider the entire contractual context, as well as the application of several relevant factors, all of which supports the conclusion here that Dan Dee's breach was not material.

Dan Dee's substitution of the domain wishuponastargifts.com for wishuponastargift.com was immaterial. The parties' Release and Settlement Agreement centered on (i) ending costly litigation and (ii) transferring to ISR the valuable WISH UPON A STAR intellectual property and the tools needed to monetize it—$140,000, the trademarks, and supporting artwork, files, and promotional materials. The singular/plural difference in a URL

did not touch the relevant intellectual property itself, did not alter ISR's ability to sell, and did not change the economic core of the deal.

All five factors under Illinois law point the same way. On the first factor, ISR received the benefit it reasonably expected: the intellectual property, assets, and a functioning domain facilitating online sales. There is no meaningful commercial distinction between the two generic ".com" variants here, particularly where the brand equity resides in the WISH UPON A STAR mark, not the noun suffix of a URL. On the second and fourth factors, any incidental costs from packaging or labels were fully curable and, in fact, Dan Dee affirmatively offered to make ISR whole. On the third factor, deeming this trivial domain variance "material" causes Dan Dee a severe forfeiture of its principal settlement benefit, the comprehensive release from pre-effective-date claims, now undermined by ISR's new lawsuit re-alleging licensing-era breaches. Finally, the fifth factor also supports immateriality, because the record shows Dan Dee's good faith—the loss of the singular domain was an inadvertent mistake promptly addressed with concrete remedial offers, not opportunism.

**STANDARD OF REVIEW**

A district court has the inherent or equitable power to enforce an agreement to settle a case pending before it, *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995), and, generally, appellate courts will not reverse the decision to enforce absent an abuse of discretion, *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). But interpretation of a settlement agreement is nothing more than interpretation of a contract, which is controlled by the law of the jurisdiction in which it was created. *In re Motorola Sec. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011). In Illinois, the interpretation of a contract/settlement agreement, presents a question of law that the Court reviews de novo. *Daniels v. Hughes*, 147 F.4th 777, 784 (7th Cir. 2025). And it is axiomatic that "[a] decision based on an error of law represents an abuse of discretion," *Bakov v. Consol. World Travel, Inc.*, 68 F.4th 1053, 1056 (7th Cir. 2023), as does a lack of sufficient explanation for the court's decision, *Prod. & Maint. Emps. Loc. 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992).

**ARGUMENT**

**I.** **The District Court Erred In Holding That Dan Dee Materially Breached The Contract Because Dan Dee Offered An Adequate Substitute.**

**A.** Under Illinois law, a breach-of-contract claim requires a plaintiff to show (1) a valid and enforceable contract, (2) performance of contractual duties by the plaintiff, (3) breach of contractual duties by the defendant, and (4) resulting harm to the plaintiff from the defendant's breach. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022). But not all breaches are created equal. Only a *material* breach of a contract suffices to "defeat the bargained-for objective of the parties," as necessary to support a claim for breach of contract. *Sahadi v. Continental Ill. Nat'l Bank & Tr. Co. of Chi.*, 706 F.2d 193, 196 (7th Cir. 1983) (applying Illinois law).

In determining whether an alleged breach is material, courts must resolve a "complicated question of fact," *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346, 294 Ill. Dec. 348, 830 N.E.2d 760 (2005), considered in context of all of the circumstances, *Rubloff CB Machesney, LLC v. World Novelties, Inc.*, 363 Ill. App. 3d 558, 563–64, 300 Ill. Dec. 464, 844 N.E.2d 462 (2006). Guiding this determination, courts look to several factors, including: (1) how much the injured party is denied the benefit they

– 19 –

reasonably expected; (2) whether the injured party can be adequately compensated for the lost portion of that benefit; (3) the degree of forfeiture the party who failed to perform—or to tender performance—would suffer; (4) the likelihood that the breaching party will cure the failure, considering all circumstances and any reasonable assurances; and (5) whether the conduct of the party who failed to perform met standards of good faith and fair dealing. *Id.* at 564; *see also Sahadi*, 706 F.2d at 196.

**B.** Dan Dee's alleged breach of the parties' Release and Settlement Agreement was immaterial. Consideration of the entire context of the parties' settlement and all relevant factors under Illinois law, Dan Dee's provision of the plural website wishuponastargifts.com rather than the initially considered wishuponastargift.com meets none of the criteria to be considered a material breach.

*Context.* Avoiding expensive litigation and transferring to ISR the valuable intellectual property related to WISH UPON A STAR—not a pedantic dispute over the minutiae of a URL's plural or singular nature— were the core interests negotiated. Paragraph 3 of the Release and Settlement Agreement, which all agree represents the core negotiated settlement between the parties, centered on allowing ISR to monetize the licensed

product and intellectual property related to WISH UPON A STAR. SA at 5. In addition to the $140,000 settlement payment, ISR received "all right, title, and interest to the trademarks reflected in the License Agreement . . . , including, but not limited to, WISH UPON A STAR (U.S. Serial number 90613521)." *Id.* The Agreement also provided ISR the supporting materials to allow it to sell the product, including "all artwork, art files, promotional materials, and designs for the packaging and tagging of the Licensed Product," as well as the website wishuponastargift.com to facilitate online sales of the product. *Id.*

Substituting the website wishuponastargift̲s.com, which in no way implicated the intellectual property related to the product, does not shift the negotiated settlement one iota. Dan Dee agreed to provide additional funds to replace any inaccurate hangtags and package sleeves to conform to the plural website, as well as additional funds in "good faith and conciliation," SA at 12–13, all supporting the fact that ISR received exactly the benefit of its negotiations. In short, the facts of this case all confirm that wishuponastargift.com and wishuponastargifts.com are effectively equivalents and have no bearing on whether ISR received the benefit of its bargain.

*Illinois Factors*. Every factor supports the conclusion that Dan Dee did not materially breach the Release and Settlement Agreement. The first factor—consideration of how much ISR was denied the benefit it reasonably expected, *Rubloff*, 363 Ill. App. 3d at 564—supports Dan Dee for all of the reasons just explained. *Supra* at pp. 20–21. There is no tangible, commercial difference between the two web domains, particularly here, where the intellectual property is in its relative infancy, and consumers have not yet attributed any special relevance or meaning to the wishuponastargift.com website. *See U.S. Patent & Trademark Office v. Booking.com B. V.*, 591 U.S. 549, 561–64 (2020). Combined with Dan Dee's efforts to cover any costs incidental or ancillary to this minor website shift, ISR has received all of the benefit it negotiated.

The second and fourth factors, regarding whether ISR could be adequately compensated for any lost benefit, and the likelihood that Dan Dee would cure any failure, *Rubloff*, 363 Ill. App. 3d at 564, also support the conclusion that any breach was immaterial. Not only could ISR be compensated for any alleged loss, Dan Dee explicitly made the offer to do so, going above and beyond any harms ISR might have suffered from the replacement website. SA at 12–13. Dan Dee not only agreed to cover all

expenses necessary to facilitate ISR's use of the wishuponastargifts.com website, as well as any legal costs incurred in seeking to enforce the Release and Settlement Agreement, but also updated previously delivered digital files so that ISR's packaging artwork, hangtags, and QR code would work with wishuponastargifts.com without any additional time or effort by ISR, thereby making ISR more than whole for the minor breach.

On the third factor, Dan Dee would suffer and is suffering effective forfeiture and significant loss of its benefit of the bargain due to ISR's bad-faith claim that failure to receive the wishuponastargift.com website caused a material breach. *Rubloff*, 363 Ill. App. 3d at 564. The Release and Settlement Agreement explicitly noted that the parties intended to settle the lawsuit "without any admission of liability and solely to avoid the future expense of protracted complex litigation," which was incorporated into the parties' core contractual agreement. SA at 4–5. As a result, the most significant benefit Dan Dee received from the settlement was Plaintiff's release of Dan Dee and all related persons

> from and against any and all rights, claims, suits, demands, debts, dues, sums of money, accounts, liens, liability, damages, attorneys' fees, losses, costs, complaints, judgments, actions and causes of action of any nature whatsoever, cognizable at law or equity, for indemnity or otherwise, whether asserted or

> unasserted and whether known or unknown, fixed or contingent, arising out of any act, error, omission, thing, agreement or event occurring prior to the Effective Date hereof, including those arising out of any claims and causes of action which were, might or could have been asserted in the litigation described in the Recitals to this Agreement.

SA at 6. But the district court's erroneous conclusion that Dan Dee materially breached the Release and Settlement Agreement has emboldened ISR to completely disregard that release term of the parties' settlement by filing a second lawsuit against Dan Dee in the U.S. District Court for the Northern District of Illinois. ISR now alleges that Dan Dee "repeatedly and recklessly breached its obligations [to ISR], including failing to provide compliance documentation essential for retail platforms such as Amazon, significantly harming ISR's ability to sell its licensed products," which breaches occurred "[t]hroughout the agreement term" of the parties' 2021 licensing agreement, SA at 31, a claim that falls squarely within the scope of ISR's release. Thus, ISR has attempted to renege on the terms of the deal it struck in the Release and Settlement Agreement, despite the fact that Agreement and the releases it contains remain valid and binding. In effect, the district court's erroneous conclusion that the URL issue created a material breach has incited ISR to

seek double and triple recovery, in direct contravention of its contractual release of claims against Dan Dee.

Finally, Dan Dee's conduct throughout the settlement and post-settlement periods has always met standards of good faith and fair dealing. *Rubloff*, 363 Ill. App. 3d at 564. Dan Dee's failure to retain the wishuponastargift.com website, while regrettable, resulted from a simple mistake, not any ill will or bad faith. *See* R. 60 at 2. In Illinois, the duty of contracting parties to operate in good faith and fair dealing is intended to protect against one party to an agreement taking advantage of the other in a way that they did not contemplate at the time of contracting. *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 28, 456 Ill. Dec. 214, 193 N.E.3d 182. At its core, this requires contracting parties to act "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id.* (quoting *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 165, 287 Ill. Dec. 267, 815 N.E.2d 911 (2004)). Dan Dee's simple error, and subsequent, significant efforts to remedy it, all fall well short of a violation of good faith and fair dealing. Therefore, this factor, too, supports the immateriality of the breach.

Taken together, all of the facts and relevant factors support the conclusion that Dan Dee's failure to maintain the wishuponastargift.com website was immaterial, and the district court erred in concluding otherwise.

**C.** The magistrate judge's and district court's contrary conclusion, and ISR's various arguments in support, all fail to persuade.

The magistrate judge, for its part, never even considered materiality in its Report and Recommendation. SA at 19. Instead, she simply noted that Dan Dee had failed to transfer wishuponastargift.com to ISR—while conceding that Dan Dee *had* transferred wishuponastargifts.com—and concluded on that basis that Dan Dee had breached the Release and Settlement Agreement. *Id.* Thus, the magistrate judge never considered materiality at all, despite its relevance to any claim of breach of contract under Illinois law. *See Rubloff*, 363 Ill. App. 3d at 563–64. That failure to address the issue is an abuse of discretion. *Bakov*, 68 F.4th at 1056.

And the district court provided only a cursory nod to materiality, without engaging the substance, and adopted the Report and Recommendation "in its entirety," thereby failing to cure the magistrate judge's error. SA at 2. The court simply accepted at face value ISR's unexplained and unsupported contentions that a one-letter difference in a

domain name (regardless of the circumstances) materially affected the value of the domain name and that the shift from "gift" to "gifts" had somehow rendered $180,000 of inventory "effectively unsellable." *Id.* But these evidence-less assertions fail entirely to engage with the relevant factors for determining materiality, as established under Illinois law. *See, e.g.*, *Rubloff*, 363 Ill. App. 3d at 563–64; *Sahadi*, 706 F.2d at 196. Thus, the district court's adoption of the Report and Recommendation in full was based upon an error of law, rendering it too an abuse of discretion. *Bakov*, 68 F.4th at 1056.

ISR's limited arguments regarding materiality below similarly miss the boat. As an initial matter, ISR's contention that URL modifications of even a single letter can be significant fails to consider the context of the current dispute. *Contra* R. 62 at 3–4. The examples ISR provided—"car.com" versus "cars.com" and "apple.com" versus "apples.com"—both relate to established domain names that users have come to know. The distinction here, however, is the distinction between two quintessentially "generic.com" domain names that consumers are highly unlikely to distinguish between, particularly considering it is the mere suffix to ISR's actual trademark "WISH UPON A STAR." *Booking.com*, 591 U.S. at 561–64.

No better are ISR's allegations about detrimental effects to packaging, printed materials, and existing inventory. R. 62 at 3. Beyond the fact that ISR never substantiated these allegations, Dan Dee explicitly not only offered to compensate ISR to remedy these packaging and labeling issues caused by the one-letter domain name change, SA at 12–13, but also expended all efforts necessary to replace and update the files for all future packaging and labeling related to the plush toys to correspond to the new, equivalent URL, R. 60 at 2. Dan Dee's ability and willingness to rectify these deficiencies cut *against* a finding of materiality, not in favor of it. *Rubloff*, 363 Ill. App. 3d at 564.

## CONCLUSION

The Court should vacate the district court's judgment and remand with instructions to deny the motion to enforce and dismiss the case.

November 4, 2025

Respectfully submitted,

*/s/ Sean T. H. Dutton*

Rex W. Manning
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

John P. Del Monaco
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

Sean T. H. Dutton
KIENBAUM HARDY
VIVIANO PELTON & FORREST PLC
280 N. Old Woodward Ave.
Birmingham, MI 48009
Telephone: (248) 227-0000

Kelli M. Mulder
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above appellate brief was filed electronically on November 4, 2025, and will therefore be served electronically upon all counsel.

/s/ Sean T.H. Dutton

Sean T.H. Dutton

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

The foregoing brief complies with Fed. R. App. P. 32(a)(7)(B) and (C) and Circuit Rule 32(c) because it contains 5,656 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) and (6) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced, Roman style typeface of 14 points or more.

/s/ Sean T.H. Dutton

Sean T.H. Dutton

# CIRCUIT RULE 30(d) CERTIFICATE

Pursuant to Circuit Rule 30(d), I hereby certify that all materials required by Circuit Rules 30(a) and (b) are included in the Required Short Appendix bound with Dan Dee's brief.

*/s/ Sean T.H. Dutton*

Sean T.H. Dutton

# REQUIRED SHORT APPENDIX
*Pursuant to Circuit Rule 30(a)*

_____

# TABLE OF CONTENTS

**SA Page(s)**

Order, Minute Entry Final Judgment, Terminating Civil Case, *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. July 18, 2025), R. 77 ...............................................1

Order, Minute Entry, Adopting Report & Recommendation, *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. May 27, 2025), R. 72 .......................................................................2–3

Release And Settlement Agreement, filed as Exhibit in *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. Apr. 3, 2025), R. 61 ......................................... 4–11

Letter Correspondence From Counsel for Dan Dee to Counsel for ISR, filed as Exhibit in *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. Apr. 3, 2025), R. 61-1 ................................................... 12–15

Email Correspondence From Dan Dee to ISR, filed as Exhibit in *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. Apr. 3, 2025), R. 61-2 ............................ 16–17

Magistrate Judge's Report & Recommendation Granting ISR's Motion to Enforce the Settlement Agreement, *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. Mar. 20, 2025), R. 57 .......................................... 18–21

Complaint, *Int'l Star Registry of Ill., Ltd. v. Dan Dee Int'l, Inc.*, No. 1:24-cv-04759 (N.D. Ill. June 7, 2024), R. 1-1 .............................. 22–29

Complaint, *Int'l Star Registry of Ill., Ltd. v. DanDee Int'l, LLC*, No. 1:25-cv-06086 (N.D. Ill. May 30, 2025), R. 1 ............................... 30–36

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3)**
**Eastern Division**

International Star Registry of Illinois, Ltd.
                                                    Plaintiff,

v.                                                          Case No.: 1:24–cv–04759
                                                    Honorable Franklin U. Valderrama

Dan Dee International, LLC
                                                    Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, July 18, 2025:

     MINUTE entry before the Honorable Franklin U. Valderrama: The parties have not filed a status report disagreeing with the Court's 07/07/2025 minute entry [76], which indicated the Court's intention to dismiss this case. Accordingly, and given the Court's grant of Plaintiff's motion to enforce settlement [72], this case is dismissed. Plaintiff's motion for extension of time [74] is denied as moot. Civil case terminated. Mailed notice. (jcm)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

SA 1

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3)**
**Eastern Division**


International Star Registry of Illinois, Ltd.
                                        Plaintiff,

v.                                                          Case No.: 1:24−cv−04759
                                                    Honorable Franklin U. Valderrama

Dan Dee International, LLC
                                        Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**


This docket entry was made by the Clerk on Tuesday, May 27, 2025:


        MINUTE entry before the Honorable Franklin U. Valderrama: On 01/28/2025, Plaintiff filed a motion to enforce the settlement agreement [43]. This Court referred that motion to Magistrate Judge Hotaling for a possible Report and Recommendation (R&R); [45]. The parties were unable to informally resolve Plaintiff's motion, and Magistrate Judge Hotaling issued an RR recommending that Plaintiff's motion be granted and that Plaintiff be awarded $6,500 in attorney fees [57]. Defendant timely filed an objection to the RR [60]. "When a party objects to a magistrate judge's report and recommendation on a dispositive matter, the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Symbria, Inc. v. Callen, 2024 WL 416862, at *2 (N.D. Ill. Jan. 19, 2024) (cleaned up) (quoting 28 U.S.C. § 636(b)(1)); see also Fed. R. Civ. P. 72(b). Defendant only objects to Magistrate Judge Hotaling's finding that it committed a "material breach" of the settlement agreement by transferring the rights to "wishuponastargifts.com" as opposed to "wishuponastargift.com." Plaintiff counters that it was indeed material to the settlement agreement that Defendant transfer the rights to "wishuponastargift.com," as "even a one−letter difference in a domain name can materially impact ownership, value, and the content that users and consumers access." R. 62 at 3–4. Further, Plaintiff states that it "currently holds approximately $180,000 in retail inventory rendered effectively unsellable due to Defendant's breach, directly attributable to the unavailability of the agreed−upon domain." Id. at 3. The Court agrees with Plaintiff and finds Defendant's assertions that there is "no conceivable difference" between the two domains and that Plaintiff's retail inventory "can easily be replaced" to be conclusory and unpersuasive. R. 63 at 2. Accordingly, the Court adopts Magistrate Judge Hotaling's well−reasoned RR [57] in its entirety. The Court grants Plaintiff's motion to enforce the settlement agreement [43] and orders Defendant to pay Plaintiff $6,500 in attorney fees related to the enforcement of the settlement agreement. By 06/26/2025, the parties shall file a stipulation of dismissal or a joint status report explaining the delay. Mailed notice. (jcm)


**SA 2**

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**SA 3**

## RELEASE AND SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into effective this 23 day of December, 2024, by and among, Plaintiff, INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., an Illinois corporation ("Plaintiff") and Defendant, DAN DEE INTERNATIONAL, LLC, a Delaware corporation ("Defendant").

## RECITALS

WHEREAS, on April 19, 2024, Plaintiff filed a five count complaint in the Circuit of Cook County, Illinois, Case No. 2024CH03500, seeking breach of contract/product, tortious interference with business relations and breach of contract, corporate defamation/slander, breach of contract/QVC contract, mandamus/injunction against Defendant ("Lawsuit");

WHEREAS, the Lawsuit was transferred to the United States District Court for the Northern District of Illinois, Case No. 24-cv-04759;

WHEREAS, Defendant filed a Motion to Dismiss the Verified Complaint on June 13, 2024, and the parties fully briefed the motion;

WHEREAS, Plaintiff and the Defendant have now negotiated vigorously and in good faith, and desire to settle, compromise and resolve any and all claims and all other matters in dispute between them without any admission of liability and solely to avoid the future expense of protracted, complex litigation.

## AGREEMENT

NOW THEREFORE, in consideration for the mutual promises contained herein, the parties hereby agree as follows:

1

**SA 4**

1.    **Incorporation of Recitals**.  The recitals set forth above are expressly incorporated and made part of this Agreement.

2.    **Settlement Payment and Transfer of Intellectual Property**.  Defendant agrees to pay via wire transfer to Gregory E. Kulis & Associates., Ltd., IOLTA, the sum of One Hundred and Forty Thousand Dollars and no cents ($140,000.00).

3.    Defendant hereby transfers and assigns all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code, to Plaintiff. Defendant hereby transfers and assigns all right, title, and interest to the trademarks reflected in the License Agreement dated October 1, 2021, attached to the Complaint as Exhibit I, including, but not limited to, WISH UPON A STAR (U.S. Serial number 90613521), to Plaintiff. Defendant shall send all artwork, art files, promotional materials, and designs for the packaging and tagging of the Licensed Product (as defined in the License Agreement) to Plaintiff. Defendant acknowledges that the compliance paperwork provided in the Lawsuit is a true and accurate copy. All the aforementioned artwork, art files, promotional materials, and designs shall be assigned and delivered to Plaintiff within 30 days of the execution of this Agreement.  Plaintiff shall be responsible for updating the ownership of the trademarks with the U.S. Patent and Trademark Office.

4.    Collectively paragraphs 2-4 shall be referred to as the "Settlement Amount" and shall be full and final settlement of all claims between and among the parties in the Lawsuit, and in satisfaction of all claims by Plaintiff to any interest in the Lawsuit.

5.    **Mutual Releases**.  Upon receipt of the Settlement Amount, Plaintiff, on behalf of himself, his heirs, current and former representatives, agents, assigns, attorneys, and present or

2

**SA 5**

future predecessors, successors and any other person or entity asserting claims through any of them does hereby release and forever discharge the Defendant, their current and former representatives, owners, members, partners, agents, assigns and attorneys, present, former or future affiliates, predecessors, successors, subsidiaries, stockholders, executors, administrators, members, managers, directors, officers, employees and agents from and against any and all rights, claims, suits, demands, debts, dues, sums of money, accounts, liens, liability, damages, attorneys' fees, losses, costs, complaints, judgments, actions and causes of action of any nature whatsoever, cognizable at law or equity, for indemnity or otherwise, whether asserted or unasserted and whether known or unknown, fixed or contingent, arising out of any act, error, omission, thing, agreement or event occurring prior to the Effective Date hereof, including those arising out of any claims and causes of action which were, might or could have been asserted in the litigation described in the Recitals to this Agreement.

6. Defendant, on behalf of themselves, their current and former representatives, owners, members, managers, partners, agents, assigns and attorneys, present, former or future affiliates, predecessors, successors, subsidiaries, stockholders, administrators, managers, directors, officers, employees and agents any other person or entity asserting claims through any of them due release and forever discharge Plaintiff, his respective heirs, current and former representatives, executors, administrators and agents from and against any and all rights, claims, suits, demands, debts, dues, sums of money, accounts, liens, liability, damages, attorneys' fees, losses, costs, complaints, judgments, executions, actions and causes of action of any nature whatsoever, cognizable at law or equity, whether asserted or unasserted and whether known or unknown, fixed or contingent, arising out of any act, error, omission, thing, agreement or event occurring prior to the Effective Date hereof, including those arising out of any claims or causes of action which were, might or could have been asserted in the litigation described in the Recitals to this Agreement.

3

**SA 6**

7. **Dismissal of Claims**. Within five days of receipt by Plaintiff of the Settlement Amount, Plaintiff shall dismiss with prejudice and without costs, any claims filed against Defendant.

8. **Attorneys' Fees**. The parties shall each bear their own costs and attorneys' fees expended in connection with the litigation and the preparation of this Agreement. In the event that there is any controversy or claim arising out of or relating to this Agreement, or to the interpretation, breach or enforcement thereof, and any action or proceeding is commenced to enforce the provisions of this Agreement, the prevailing party shall be entitled to a reasonable attorneys' fees, costs and expenses.

9. **Illinois Law to Apply.** This Agreement shall be construed under and in accordance with the laws of the State of Illinois. Any court action related to the payment terms contained in paragraphs 2-4 of this Agreement or to enforce the terms shall be filed either in the Circuit Court of Cook County Illinois or in the United States District Court for the Northern District of Illinois.

10. **Confidentiality**. The terms and conditions of this Agreement are confidential between the parties, its accountants, and attorneys, and shall not be disclosed to anyone else, except as may be necessary to effectuate its terms,

11. **No Admission of Liability**. This Agreement shall not in any way be deemed or constitute an admission of liability or of any error or omission by Plaintiff or Defendant, and Defendant vigorously denies any liability, error or omission.

12. **Good Faith Negotiations**. The parties hereby stipulate and acknowledge that this Agreement was entered into in good faith after extensive arms-length negotiations.

4

**SA 7**

13. **Captions**. The captions of this Agreement are for convenience only and shall not be considered or referred to in interpretation or construction of any terms or provisions.

14. **Assignment and Transfer Warranty**. Each party to this Agreement represents and warrants that he/she/it has not heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands, or cause or causes of action disposed of by the Agreement, and each party is the sole owner of all of the claims, demands, or cause or causes of action disposed of by the Agreement.

15. **Sole Expression of Agreement**. This Agreement comprises the sole and complete expression of the understanding and agreement of the parties, and will not be amended or altered except in writing executed by the parties or their duly authorized officers or agents. This Agreement supersedes and replaces all prior negotiations, term sheets and agreements (whether verbal or written) between the parties. The terms of this Agreement are contractual in nature and not mere recitals.

16. **Waiver**. No waiver of any right, obligation or default hereunder shall be implied, but must be in writing, signed by the party against whom the waiver is sought to be enforced. Any particular waiver of any right, obligation or default shall not be construed as a waiver of any subsequent or other right, obligation or default.

17. **Execution and Counterparts**. This Agreement may be signed using one or more counterparts, and facsimile and emailed signatures shall be sufficient to bind the parties. The several executed copies together shall be considered an original and shall be binding upon the parties.

5



**SA 8**

18. **Authorization**. The undersigned each represent and warrant that they are authorized to sign this Agreement on their own behalf and, for those signing on behalf of an entity, on behalf of their respective principals, and that they do not need to obtain any further authority or consent to enter into this Agreement.

19. **Opportunity to Review**. Each of the parties has been represented by counsel of its choice during the negotiation of the settlement and the drafting of this Agreement. Each of the parties has had the opportunity to review and revise (or request revisions to) this Agreement. Therefore, any rules of construction or interpretation requiring that ambiguities are to be resolved against any party hereto shall not be applicable to the construction and interpretation of this Agreement. This Agreement shall be deemed to have been mutually prepared by the parties, and shall not be construed against any of them by reason of authorship or drafting.

20. **Read Before Signing**. The parties acknowledge that they have carefully read this Agreement and agree to be bound by its terms. The parties further acknowledge that their respective attorneys have explained this Agreement to them and they understand the terms of this Agreement, and the rights and claims they are releasing under this Agreement. The parties further acknowledge that they have had sufficient time to consider this Agreement before signing it, and to consult with whomever necessary to ensure that they understand the legal implications of this Agreement before signing it.

21. **Effective Date:** The effective date of the Agreement shall be the date on which all parties shall have signed the agreement (the "Effective Date").

**IN WITNESS WHEREOF**, the undersigned expressly acknowledge and agree to this Settlement Agreement.

6

**SA 9**

SA 10

INTERNATIONAL STAR
REGISTRY, LTD.

By: _____ ROCKY MOSELE

Dated: 12-23-24

DAN DEE INTERNATIONAL, LLC

_____

By: _____

Dated: _____

7

SA 11

**INTERNATIONAL STAR
REGISTRY, LTD.**

By: _____ ROCKY MOSFLE

Dated: _12 - 23 - 24_

**DAN DEE INTERNATIONAL, LLC**

By: _____ KEITH KOTEL

Dated: _12-24-24_

7

# KIRKLAND & ELLIS LLP

601 Lexington Avenue<br>
New York, NY 10022<br>
United States

John P. Del Monaco
To Call Writer Directly:
    +1 212 446 4795
john_delmonaco@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

March 8, 2025

**By E-mail**

Kenneth Hurst
Gregory E. Kulis and Associates, Ltd.
134 N. LaSalle St.
Suite 444
Chicago, IL 60602

Re: ISR v. Dan Dee Settlement Agreement

Dear Mr. Hurst:

We write on behalf of Defendant Dan Dee ("Dan Dee") in an effort to reach a final and consensual resolution of the dispute between Dan Dee and Plaintiff International Star Registry ("ISR").

Over the last number of weeks, Dan Dee has made numerous efforts to reacquire the rights to the URL – wishuponastargift.com – but unfortunately those efforts have been unsuccessful. As you know, however, Dan Dee has already delivered to ISR the rights to the other (equivalent) URL that it had acquired in connection with the parties' anticipated commercial relationship – wishuponastargifts.com – and provided updated artwork (including an updated QR code) corresponding to that URL. That means that, with respect to the production and sale of future products utilizing the Wish Upon a Star trademark, ISR is in exactly the same position the parties contemplated by the settlement agreement.

In response to ISR's contention that the legacy products that Dan Dee manufactured for ISR prior to the breakdown in the parties' relationship utilize the former URL on the hang-tag and package sleeve, Dan Dee is willing to do the following in order to resolve the issue so that the parties can move forward amicably: (1) Dan Dee will make a payment to ISR of $2,000 to cover the costs of reproduction of the hang-tag and package sleeve; (2) Dan Dee will make a payment to ISR to reimburse ISR for any reasonable attorneys' fees incurred in connection with seeking to enforce the settlement agreement (which we understand to be in the order of approximately $7,000); and (3) Dan Dee will make an additional payment to ISR in the amount of $5,000 as an

Austin  Bay Area  Beijing  Boston  Brussels  Chicago  Dallas  Frankfurt  Hong Kong  Houston  London  Los Angeles  Miami  Munich  Paris  Riyadh  Salt Lake City  Shanghai  Washington, D.C.

**SA 12**

# KIRKLAND & ELLIS LLP

Kenneth Hurst
March 8, 2025
Page 2

additional sign of good faith and conciliation. As a result, ISR will be placed in at least an equal – if not better – position than had Dan Dee been able to deliver the wishuponastargift.com website.

If ISR chooses to decline this reasonable solution and pursues further litigation against Dan Dee, I want to be very clear about the consequences. To be clear, Dan Dee will vigorously defend against any claim of breach and will seek its attorneys' fees – which will certainly extend well into the many millions of dollars – at the end. Dan Dee will also assert a variety of counterclaims against ISR that further increase your client's exposure.

## A Lawsuit for Breach of the Settlement Agreement Will Fail

So that there is no confusion about the weakness of ISR's case, let me point out just a few additional facts. **First**, there are myriad domains that are currently available that utilize some derivation of Wish Upon a Star, including for example:

- wishuponastartoy.com
- wishuponastarbear.com
- wishuponastarplush.com
- wishuponastarplushbear.com
- wishuponastarplushtoy.com
- wishuponastargiftbear.com
- wishuponastargiftplush.com
- wishuponastargifttoy.com

This squarely puts the lie to ISR's contention that there is something unique or special about the URL in question.

**Second**, we have also recently learned that ISR is utilizing *its own website* to provide the same functionality as contemplated by the wishuponastargift.com website. Specifically, ISR is currently selling a similar product, the "Star Wishes Teddy Bear," and directing customers to starregistry.com to register the purchased bear with a star. This makes clear that ISR has the capability to use its own website for the same purpose as wishuponastargift.com; in other words, these actions demonstrate that the wishuponastargift.com website is entirely superfluous and has no bearing on ISR's ability to sell its products.

**Third**, we have likewise come to learn that ISR is already selling the Wish Upon A Star bear on its website. This undermines the contention that the lack of the original URL renders the inventory unsellable. *See* Feb. 10 Letter at 2 (claiming product is "effectively unsellable due to Dan Dee's failure to transfer the domain").

**SA 13**

# KIRKLAND & ELLIS LLP

Kenneth Hurst
March 8, 2025
Page 3

These facts alone will present an insurmountable hurdle to ISR in any future lawsuit.  They establish that any purported breach of the settlement agreement was not material.  A material breach occurs when a party to the contract fails to perform an element of the agreement without which the contract would not have been made.  *See MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 570 (N.D. Ill. 1999).  The idea that gift.com versus gifts.com rises to this standard is far from plausible.  *See Rubloff CB Machesney, LLC v. World Novelties, Inc.*, 363 Ill. App. 3d 558, 564, 844 N.E.2d 462, 467 (2006) (outlining considerations for determining whether a breach is material).  Moreover, ISR will not be able to demonstrate any actual damages in any event.  Dan Dee provided an equivalent website, along with redesigned packaging (including an updated QR code) corresponding to the website.  And as noted, we know that ISR can use its own website for star registration, just as it is doing for the Build-A-Bear product.

## Dan Dee Is Prepared to Take Action to Protect Itself

Any lawsuit against Dan Dee will also result in a slew of counterclaims.  First, Dan Dee will seek to rescind the settlement agreement, including on the basis of fraudulent inducement.  *See Allstate Fin. Corp. v. Util. Trailer of Illinois, Inc.*, 936 F. Supp. 525, 528-29 (N.D. Ill. 1996).

Of note, during the settlement discussions, ISR repeatedly claimed that Dan Dee's actions had purportedly irretrievably harmed ISR's relationship with QVC.  As a few additional examples:

- "As a result of the actions of Dan Dee the Plaintiff has suffered and will suffer damage to its reputation and ability to formulate future offerings with QVC."  Compl. para 29 at 5.

- "The Plaintiff has alleged a longstanding and successful relationship with QVC, and the email from the Defendant damaged the Plaintiff's reputation, causing injury not only to the present purchase orders but also to the substantial financial and reputational goodwill that the Plaintiff has built over the years and would have continued into the future."  MTD Opp. at 12.

- "DanDee later withdrew from this deal, causing severe damage to ISR's 20-year relationship with QVC."  Sept. 10, 2024 Letter at 2 (demanding $675,000 to settle the dispute).

- "ISR's reputation has been severely damaged, particularly in its long-standing relationship with QVC. ISR's failure to deliver the product as expected, due to Dan Dee's breaches, has led to the deterioration of its 20-year partnership with QVC, which has since rejected ISR's efforts to restore the relationship."  Sept. 10, 2024 Letter at 4 (demanding $675,000 to settle the dispute).

**SA 14**

## KIRKLAND & ELLIS LLP

Kenneth Hurst
March 8, 2025
Page 4

- "This breach has not only damaged ISR's long-standing reputation with QVC but also resulted in lost sales and a lack of widespread exposure—a disappointing outcome given ISR's prior successes with QVC." Nov. 5, 2024 Letter at 2 (demanding $675,000 to settle the dispute).

- "The resulting damage to ISR is substantial and multifaceted. These damages include, but are not limited to: . . . The erosion of ISR's valuable relationship with QVC, cultivated over 20 years." Dec. 10, 2024 Letter at 1 (demanding $500,000 to settle the dispute).

Despite inducing Dan Dee into a settlement agreement with these contentions, ISR is now claiming that it has purportedly lost business opportunities with QVC post-dating entry into the settlement agreement due to the issue with the wishuponastargift.com website. These new allegations call into question many representations that were made by ISR to Dan Dee to secure the original settlement agreement.

We also note that ISR was apparently still selling the Wish Upon A Star bear product between the date when ISR terminated the parties' license agreement and the date when Dan Dee transferred the corresponding trademark to ISR. Dan Dee is prepared to assert claims for trademark infringement against ISR for these activities.

***

Of course, Dan Dee's overriding preference is to avoid additional costly and distracting litigation with ISR. Going down the litigation path would not serve anyone's commercial interest. We hope that your client will consider these points and reach the same conclusion.

Sincerely,

*/s/ John P. Del Monaco*

John P. Del Monaco

**SA 15**

**From:** Sam Changizi <SChangizi@dandeeint.com>
**Sent:** Thursday, February 6, 2025 4:19 AM
**To:** rocky@internationalstarregistry.com
**Cc:** Garth Pauley (US-Operations) <GPauley@dandeeint.com>; Paul Berger (US-Finance) <pberger@dandeeint.com>
**Subject:** www.wishuponastargifts.com Website Migration & Ownership Transfer Instructions

Hi Rocky,
We have successfully migrated the website **WishUponAStarGift.com** to **www.wishuponastargifts.com**, and it is now fully operational.
To assume full ownership of the site, we have initially made you a **co-owner**. Once you accept co-ownership, (a separate invite email was sent to you already) we will be able to **promote you to the full owner**. At that point, you will need to:

1. Remove both Kevin's and Alfredo's accounts.
2. Update the credit card on file.

We have temporarily kept a credit card on file to prevent any service interruptions, but please ensure the payment details are updated before the **renewal deadline on February 25** to avoid any disruptions.
**Domain Transfer**
When a team member updated the credit card information last month, it **triggered a 60-day transfer lock** due to **ICANN regulations**, which all domain providers, including GoDaddy, must follow. While we did request an exception, GoDaddy was unable to grant it.
Attached is a screenshot for verification.



We have scheduled the domain transfer for **March 3**, and as soon as GoDaddy allows, we will generate and provide you with the transfer code. In the meantime, if you need to make

any **DNS changes**, please don't hesitate to let us know, and we will process your request as soon as possible.
Please don't hesitate to reach out if you have any questions or need further help.
Best regards,
**Sam Changizi**
schangizi@dandeeint.com

  

www.dandeeint.com | www.animaladventure.com | Customer Service: +1 213.797.0539

**SA 17**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 24-cv-4759 |
| | ) | District Judge Franklin U. Valderrama |
| DAN DEE INTERNATIONAL, LLC, a Delaware corporation, | ) ) | Magistrate Judge Keri Holleb Hotaling |
| Defendant. | ) ) ) | |

**REPORT AND RECOMMENDATION**

The district judge referred the resolution of Plaintiff's Motion to Enforce the Settlement Agreement (the "Motion") [Dkt. 43] to this Court to resolve, "with a Report and Recommendation to issue [] if necessary." [Dkt. 45.] The Court inadvertently neglected to frame its order as a report and recommendation and now does so. Since the filing of the Motion, the Court has worked with the parties in effort to resolve this motion informally. Unfortunately, those efforts have not been successful, and the parties are at an impasse. The Court therefore issues this Report and Recommendation. The Court recommends the district court find the following facts and reach the following conclusions:

1. The parties reached a settlement on December 17, 2024.

   a. On December 17, 2024, during the parties' settlement conference, the parties agreed upon material terms of the settlement, which were specifically documented by Judge Holleb Hotaling as material in a written communication following the settlement conference.

   b. The parties executed a consistent written settlement agreement on December 24, 2024.

1

**SA 18**

       i. Paragraph 3 of the settlement agreement contains a term material to the settlement agreement. In part, it provides that Defendant, Dan Dee International, LLC, "hereby transfers and assigns all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code, to Plaintiff, . . .."

c. Judge Holleb Hotaling communicated extensively with both Plaintiff and Plaintiff's counsel and defense counsel (receiving and/or participating in over a dozen emailed and oral communications) between January 30, 2025, and March 13, 2025. [*See, e.g.,* Dkt. 47-51.]

       i. Defendant does not dispute that Paragraph 3 required it to transfer and assign to Plaintiff all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code.

       ii. Defendant has not transferred and assigned to Plaintiff all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code because it does not have such right, title, and interest.

       iii. [The Court notes that Defendant did transfer and assign to Plaintiff all right, title, and interest to the domain, website content, URL, wishuponastargifts.com.]

2. Plaintiff incurred attorneys' fees for enforcement of the motion to enforce.

a. Paragraph 8 of the settlement agreement provides that "[i]n the event that there is any controversy or claim arising out of or relating to this agreement, or to the interpretation, breach or enforcement thereof, and any action or proceeding is commenced to enforce the provisions of this Agreement, the

2

**SA 19**

prevailing party shall be entitled to a reasonable attorneys' fees, costs and expenses."

b. As of February 19, 2025, Plaintiff reported to the Court it had incurred $6,500.00 in attorneys' fees related to enforcement of the settlement agreement.

c. Although the Court informed Plaintiff's counsel it was waiting on a further report from defense counsel on a date provided in the Court's order [*see* Dkt. 50], Plaintiff's counsel sent additional unsolicited and unnecessary communications to the Court after February 19, 2025. On March 17, 2025, Plaintiff reported having incurred a total of $9,132.50 in attorneys' fees related to its enforcement motion. Because the Court did not request or require Plaintiff's communications after February 19, 2025 for resolution of Plaintiff's motion to enforce, the Court does not recommend reimbursement of attorneys' fees related to the post-February 19, 2025 communications.

d. This leaves the $6,500.00 in attorneys' fees that Plaintiff had incurred as of February 19, 2025.

3. Accordingly, Plaintiff's Motion to Enforce the Settlement Agreement [Dkt. 43] should be GRANTED, and Defendant should be ordered to pay Plaintiff's attorneys' fees related to the motion to enforce in the amount of $6,500.00.

Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. Fed. R. Civ. Pro 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. *Id*. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge

**SA 20**

considers sufficient. *Id.* The settlement referral is hereby terminated, and this case is returned to Judge Valderrama for all further proceedings.

ENTERED: March 20, 2025

_____
Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

**SA 21**

FILED
4/19/2024 2:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH03500
Calendar, 14
27344785

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**COURT DEPARTMENT**
**CHANCERY DIVISION**

| | |
|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., AN ILLINOIS CORPORATION ) ) ) | |
| ) | Case No. 2024CH03500 |
| Plaintiff, ) | JURY DEMAND |
| ) | |
| v. ) | |
| ) | |
| DAN DEE INTERNATIONAL LLC, A DELAWARE CORPORATION., ) ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, International Star Registry (ISR), by and through its attorney

Gregory E. Kulis and Associates Ltd., complaining against Dan Dee International LLC (Dan Dee)

as follows:

**COUNT I – BREACH OF CONTRACT/PRODUCT**

1. Plaintiff, International Star Registry of Illinois (hereinafter "Plaintiff"), is an Illinois

   Corporation with its principal place of business located at 1461 Paddock Drive, Northbrook,

   IL 60062.

2. Defendant, Dan Dee International (hereinafter "Defendant"), is a Delaware Limited Liability

   Company with its principal place of business located at 800 Apollo Street, El Segundo, CA

   90245

3. This Court has jurisdiction over the subject matter of this action and over the Defendant

   because the Defendant conducts business within the State of Illinois, selling and distributing

   consumer products and toys in stores throughout Illinois.

1

**SA 22**

4. In 2021 Plaintiff and Defendant entered a contract (hereinafter "the Contract"), wherein Defendant agreed to produce, sell and distribute a plush toy with an online star naming component called "WISH UPON A STAR" (hereinafter referred to a "WUAS") that complied with all standard product safety regulations and provide documentation required for sale. (*See Exhibit I*).

5. Defendant agreed to provide a dedicated consumer facing website to engage the consumer at wishuponastargift.com which was jointly created by Defendant with unique content and images provided by Plaintiff.

6. The Plaintiff agreed to license the use of its well-known trademarks STAR REGISTRY, INTERNATIONAL STAR REGISTRY, and STARREGISTRY.COM to the Defendant. As required by law, the Defendant agreed that the product it produced would comply with all standard product safety regulations and provide required certifications for sale as specified under Consumer Product Safety Act.

7. Defendant delivered to Plaintiff products it manufactured.

8. The products Defendant delivered were without the required Certificate of Conformity required by the US Consumer Products Safety Commission for sale reflecting compliance under the law. Compounding this, the jointly created website wishuponastargift.com was disabled by Defendant (*See Exhibit II*).

9. The refusal to provide compliance paperwork was a material breach by the Defendant and prevented ISR from selling the product through general channels such as Walmart, Amazon, independent sales reps, etc.

10. Thus, the product delivered was incomplete and constituted a breach of its contract.

11. The Defendant was put on notice of its ongoing breach.

12. The Defendant has refused to rectify or cure its breaches.

**SA 23**

13. Despite the incomplete product, the Plaintiff offered to make a payment for the deficient product if Dan Dee would provide compliant paperwork and honor its contractual obligations.

14. Dan Dee would not and refused.

15. ISR agreed to live up to the terms of its contract upon receipt of complete product.

16. As a result of the breaches by Defendant the Plaintiff has incurred substantial financial harm, future damages and damages to its reputation in the marketplace.

17. As a result of the Defendant's actions and inactions the Plaintiff has refused to make a payment for deficient product, but in all other aspects of the contract Plaintiff ISR has lived up to its obligations.

WHEREFORE the Plaintiff prays for judgement against the defendant Dan Dee International LLC for damages in excess of fifty thousand ($50,000) dollars plus costs.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND BREACH OF CONTRACT

1-18. The Plaintiff hereby realleged and incorporates its allegations of Paragraph 1-17 of Count I as its respective allegations of Paragraphs 1-17 of count II as though fully set forth herein.

19. Pursuant to this contract Dan Dee was to provide its products with its consumer facing website wishuponastargift.com to QVC for sale through the QVC network.

20. This sale was solidified in large part due to ISR's success offering almost identical products with QVC where it had previously sold over $750,000 of product.

21. The Defendant was aware of ISR and QVC's business relationship.

22. Dan Dee negotiated the terms of the sale with the QVC broker/agent directly. Dan Dee had a contractual obligation to go forward with the sale. However, Dan Dee backed out of the negotiated sale and put the responsibility for QVC solely on ISR's shoulders and began

3

**SA 24**

ignoring emails from ISR and QVC to Dan Dee's Hong Kong representative Franny Chung, with several marked "urgent."

23. Despite repeated requests by ISR and QVC the Defendant failed to provide the necessary consumer compliance paperwork.

24. As a result of the Defendant's actions and inactions, the Plaintiff missed the opportunity for QVC National brand exposure and sales which was to occur during the 2023 holiday season.

25. As a result of the actions and inactions of the Defendant Dan Dee, the Plaintiff did not sell and could not sell this product to other outlets such as Walmart or Amazon.

26. The actions and inactions of Defendant Dan Dee have caused Plaintiff significant financial losses, including the loss of over three years' planning, development, and marketing efforts. Losses also included missed business opportunities, of which Dan Dee was aware of which included social media campaigns, a partnership with Disney, PR efforts, and damage to ISR's reputation with the marketplace and with QVC.

WHEREFORE the Plaintiff prays for judgement against the defendant Dan Dee International LLC for damages in excess of fifty thousand ($50,000) dollars plus costs.

### COUNT III CORPORATE DEFAMATION/SLANDER

1-27. The Plaintiff hereby realleges and incorporates its allegations of paragraphs 1-27 as its respective allegations of paragraphs 1-27 of Count III as though fully set forth herein.

27. The Defendant Dan Dee, through its agent Garth Pauley communicated to the QVC broker/agent and others in the business that ISR refuses to pay its bill which was absolutely a false statement

(*See Exhibit III*).

"As a measure of good faith and in order to insure the already promised and mutually

4

**SA 25**

FILED DATE: 4/19/2024 2:57 PM   2024CH03500

beneficial fulfillment of the QVC order, I am willing to submit a 50% payment of my current invoice and release the remainder of the funds within 60 days of the product achieving compliance and therefore becoming sellable and complete." – Rocky Mosele, September 14, 2023                    [Note: Contract payment terms are 60 days]

28. Said statement caused representational harm with QVC which had previously generated substantial sales for ISR.

29. As a result of the actions of Dan Dee the Plaintiff has suffered and will suffer damage to its reputation and ability to formulate future offerings with QVC " (***See Exhibit IV***).

30. The actions of Dan Dee were willful and wanton.

WHEREFORE the Plaintiff prays for judgement against the defendant Dan Dee International LLC for damages in excess of fifty thousand ($50,000) dollars plus punitive damages and costs.

## COUNT IV BREACH OF CONTRACT/QVC CONTRACT

1-19. The Plaintiff hereby realleges and incorporates its allegations of Paragraph 1-19 of Count II and Count III as its respective allegations of Paragraphs 1-19 of Count IV as though fully set forth herein.

18. Without authority, confirmation, or agreement by ISR the Defendant Dan Dee cancelled the ISR order with QVC.

"Unfortunately we will have to cancel these orders. Despite several attempts to collect an outstanding payment from them, they still refuse to pay for product that we had previously shipped to them." - Garth Pauley, September 22, 2023.

19. ISR had a long track record with QVC, with substantial sales.

20. Cancelling the WUAS sale with QVC resulted in the loss of hundreds of thousands of dollars of in consumer sales.

5

**SA 26**

21. The Initial 5600 units ordered for QVC would have generated profit of $23,928.00 for ISR.

22. Based on ISR's previous success with QVC sales over 50,000 units would likely be sold with a $4.63 markup generating over $230,00.00 in profit to ISR.

23. Countless sales were lost based on planned influence programs, planned platforms through Amazon, Walmart, and a new Disney movie release campaign.

24. Without authority, confirmation, or agreement by ISR the Defendant Dan Dee cancelled the ISR order with QVC.

25. ISR had a long track record with QVC, with substantial sales which previously had generated over $750,000.00 in revenue.

26. Cancelling the WUAS sale with QVC resulted in the loss of hundreds of thousands of dollars in consumer sales.

27. Cancelling the QVC sale was a separate breach from the non-compliant defective product.

WHEREFORE the Plaintiff prays for judgement against the defendant Dan Dee International LLC for damages in excess of fifty thousand ($50,000) dollars plus costs.

## COUNT V MANDAMUS/INJUNCTION

1-21 The Plaintiff hereby realleges and incorporates its allegations of Paragraph 1-21 of Count I, Count II, Count III and Count IV as its respective allegations of Paragraphs 1-21 of Count V as though fully set forth herein.

28. The Plaintiff is prevented from selling this product on sales platforms like Amazon, Walmart and QVC or proceeding with a campaign to interact with the dedicated website wishuponastargirft.com as a result of Dan Dee's take-down of the URL.

29. The Court should revoke the licensing agreement and return to ISR all rights to the product, all intellectual property rights for WUAS, including any trademark, copyright, images,

6

**SA 27**

designs, websites or other intellectual assets pertaining to this product or campaign including the website and URL wishuponastargift.com and other marks created for the promotion including WISH UPON A STAR ®.

30. The Court should enjoin Dan Dee from using any of the above.

31. The Defendant should be ordered to transfer/return all of the above to the Plaintiff.

32. The Court should enter the appropriate mandamus or injunction to accomplish the above.

WHEREFORE the Plaintiff prays that this honorable court grant a judgement against Dan Dee as follows:

a) Enter the appropriate order of mandamus.

b) Enter the appropriate order enjoining the Defendant Dan Dee from transferring or using said assigned items under the licensing agreement.

c) Enter an order granting costs of this litigation.

d) Enter any other relief this Court deems appropriate.

Respectfully submitted,

INTERNATIONAL STAR REGISTRY

By: _____
Gregory E. Kulis

**Gregory E. Kulis (Firm. No. 70798)**
**Gregory E. Kulis & Associates, Ltd.**
**134 North LaSalle Street, Suite 444**
**Chicago, Illinois 60602-3368**
**p. (312) 580-1830 / f. (312) 580-1839**
**e. service@kulislawltd.com**
**Pursuant to Illinois Supreme Court Rules 11(b)(6) and 131(d)(1) e-service is accepted solely at service@kulislawltd.com.**

7

**SA 28**

FILED DATE: 4/19/2024 2:57 PM   2024CH03500

FILED DATE: 4/19/2024 2:57 PM   2024CH03500

Pursuant to Illinois Supreme Court Rules 11(b)(6) and 131(d)(1) e-service is accepted solely at service@kulislawltd.com.

## §1-109 VERIFICATION BY CERTIFICATION

Under penalties as provided by law, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to such matters therein stated to be on information and belief and as to such matters, the undersigned certified aforesaid that he verily believes the same to be true.

4/19/2024
Date

Rocky Mosele, President
International Star Registry of
Illinois, Ltd.

8

SA 29

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., an Illinois Corporation, | ) ) |
| | ) Case No. 1:25-cv-6086 |
| **Plaintiff,** | ) |
| | ) |
| v. | ) JURY DEMAND |
| | ) |
| DANDEE INTERNATIONAL, LLC, a Delaware Corporation, | ) ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**COMPLAINT**

NOW COMES the Plaintiff, INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD. ("ISR"), by and through its attorneys, Gregory E. Kulis & Associates Ltd., complaining against the Defendants, DANDEE INTERNATIONAL LLC. In support thereof Plaintiff states, AS FOLLOWS:

**PARTIES**

1.      Plaintiff, INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., is an Illinois Corporation with its principal place of business in the state of Illinois.

2.      Defendant, DANDEE INTERNATIONAL, LLC ("DanDee"), is a Delaware Corporation with its principal place of business in Florida.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district under 28 U.S.C. § 1391 as a substantial part of the events giving rise to this claim occurred within this judicial district.

1

**SA 30**

## FACTUAL BACKGROUND

5.      On October 1, 2021, ISR and DanDee entered into a licensing agreement to manufacture and distribute the "Wish Upon A Star" product line, leveraging ISR's unique experiential gift concept and federally registered trademarks. *See the Licensing Agreement, attached hereto as, Plaintiff's Exhibit I*.

6.      ISR had successfully licensed similar products to prominent entities, including Mattel and Russ Berrie, resulting in millions of dollars in royalties. ISR relied on DanDee's representations of expertise and reliability to similarly commercialize "Wish Upon A Star.

7.      Throughout the agreement term, DanDee repeatedly and recklessly breached its obligations, including failing to provide compliance documentation essential for retail platforms such as Amazon, significantly harming ISR's ability to sell its licensed products.

8.      DanDee has engaged in reckless behavior and continues this reckless behavior in contractual breaches.

9.      Due to these breaches, litigation ensued (ISR v. DanDee, Case No. 1:24-cv-04759), prompting settlement negotiations before Magistrate Judge Keri Holleb Hotaling on December 17, 2024.

10.      At the time of the settlement negotiation the URL was parked at Spaceship.com.

11.      Relying on DanDee's negligent misrepresentation, ISR executed a Settlement Agreement on December 24, 2024, mandating transfer of wishuponastargift.com and related assets by January 23, 2025. *See the Settlement Agreement, Plaintiff's Exhibit II, (will file upon request of Court to file under seal)*.

12.      Said Settlement Agreement also called for attorney's fees for breach of the agreement.

**SA 31**

13. Unbeknownst to ISR, DanDee had lost control of wishuponastargift.com prior to December 17, 2024, yet concealed this fact, causing ISR significant financial and operational harm due to reliance on DanDee's false assurances.

14. Judge Franklin U. Valderrama subsequently ruled DanDee was in material breach of the Settlement Agreement on ISR's Motion to Enforce the Settlement Agreement. (See Dkt #72, 24-cv-4759, in the Northern District of Illinois).

## COUNT I – NEGLIGENT INDUCEMENT/MISREPRESENTATION

1-14. Plaintiff hereby realleges and incorporates its allegations of Paragraphs 1-14 as its respective allegations of paragraphs 1-14 of Count I as though fully set forth herein.

15. DanDee negligently misrepresented its control and maintenance of wishuponastargift.com, lacking reasonable grounds for belief in the accuracy of the representation.

16. DanDee induced ISR to settle the lawsuit.

17. ISR reasonably relied on DanDee's negligent misrepresentations, executing a Settlement Agreement resulting in substantial financial injury, lost market opportunities, and reputational damage.

WHEREFORE the Plaintiff, ISR, prays for relief in the form of compensatory damages, attorneys' fees, costs, and for such other and further relief as this Court deems just.

## COUNT II - TORTIOUS INTERFERENCE

1-17. Plaintiff ISR hereby incorporates paragraphs 1-17 as its respective allegations of paragraphs 1-17 of Count II as though fully set forth herein.

18. ISR had a reasonable expectation of entering into a valid business relationship once the settlement was complete.

19. DanDee had knowledge that ISR had this expectancy.

3

**SA 32**

20. DanDee intentionally and unjustifiably withheld crucial information about its loss of the wishuponastargift.com domain, significantly disrupting ISR's existing and prospective business relationships, including, but not limited to potential toy manufacturing partnerships and opportunities with QVC.

21. DanDee's intentional interference caused substantial harm, including lost profits, market presence, and reputational damage.

WHEREFORE the Plaintiff, ISR, prays for relief in the form of compensatory damages, punitive damages, costs, and for such other and further relief as this Court deems just.

## COUNT III – BREACH OF THE SETTLEMENT AGREEMENT

1-21. Plaintiff International Star Registry hereby incorporates paragraphs 1-21 as its respective allegations of paragraphs 1-21 of Count III as though fully set forth herein.

22. DanDee materially breached the Settlement Agreement by failing to transfer the domain wishuponastargift.com to ISR as explicitly agreed upon.

23. ISR has suffered substantial damages, including potentially unusable inventory valued at approximately $180,000, lost royalties, and impaired business opportunities.

WHEREFORE the Plaintiff, ISR, prays for relief in the form of compensatory damages, attorneys' fees, costs, and for such other and further relief as this Court deems just.

## COUNT IV – TRADEMARK INFRINGEMENT AND INJUNCTIVE RELIEF

1-23. Plaintiff International Star Registry hereby incorporates paragraphs 1-23 as its respective allegations of paragraphs 1-23 of Count IV as though fully set forth herein.

24. Without authorization, DanDee registered a different domain, wishuponastargifts.com, improperly displaying ISR's federally registered trademarks (INTERNATIONAL STAR REGISTRY, 73459110, 75175895, 73549027)(STAR REGISTRY

4

**SA 33**

75175896)( STARREGISTRY.COM 75891187), creating confusion and infringing on ISR's protected intellectual property.

25. DanDee included ISR's name and trademarks on the unauthorized domain and named ISR as a co-owner without ISR's approval, exacerbating consumer confusion and dilution of ISR's brand. *See the Co-Owner Email dated February 6, 2025, attached hereto as, Plaintiff's Exhibit III. See also the TM Website Screenshot, attached hereto as, Plaintiff's Exhibit IV.*

26. The domain wishuponastargifts.com is nearly identical to active websites and social media accounts operated by third parties, significantly increasing consumer confusion.

27. DanDee's unauthorized use of ISR's trademarks violates the Lanham Act, 15 U.S.C. § 1125(a), and Illinois law against unfair competition and false designation of origin.

28. ISR seeks immediate injunctive relief restraining DanDee's infringing activities and mandating removal of ISR's trademarks from unauthorized usage.

WHEREFORE the Plaintiff, ISR, prays for relief in the form of injunctive relief, compensatory damages, treble damages, attorneys fees, costs, and for such other and further relief as this Court deems just.

## COUNT V – COPYRIGHT INFRINGEMENT

1-28. Plaintiff International Star Registry hereby incorporates paragraphs 1-28 as its respective allegations of paragraphs 1-28 of Count V as though fully set forth herein.

29. ISR holds copyright ownership of certain images invoiced to DanDee in 2023, for which DanDee has failed to remit payment. *See the Photography Email and Invoice, attached hereto as, Plaintiff's Exhibit V.*

30. DanDee's unauthorized use of copyrighted imagery on wishuponastargifts.com constitutes willful copyright infringement under 17 U.S.C. § 501, causing ISR significant

SA 34

damages. *See also the Copyrighty Website Screenshot, attached hereto as, Plaintiff's Exhibit VI.*

WHEREFORE the Plaintiff, ISR, prays for relief in the form of injunctive relief, compensatory damages, treble damages, attorneys fees, costs, and for such other and further relief as this Court deems just.

**COUNT VI - NEGLIGENCE**

1-30.    Plaintiff International Star Registry hereby incorporates paragraphs 1-31 as its respective allegations of paragraphs 1-31 of Count VI as though fully set forth herein.

31.    DanDee owed ISR a duty to maintain control and promptly inform ISR of any issues concerning the domain wishuponastargift.com.

32.    DanDee negligently breached this duty by losing control of the domain and failing to timely inform ISR, causing significant financial harm and loss of business opportunities.

33.    As a result the Plaintiff was significantly harmed in its reputation, standing in the community, and in money damages.

WHEREFORE the Plaintiff, International Star Registry, prays for relief in the form of compensatory damages, costs, and for such other and further relief as this Court deems just.

**JURY DEMAND**

The Plaintiff hereby demands a trial by Jury.

Respectfully submitted,

INTERNATIONAL STAR REGISTRY

By: _____
Gregory E. Kulis

**Gregory E. Kulis**
**Gregory E. Kulis & Associates, Ltd.**
**134 North LaSalle Street, Suite 444**

6

**SA 35**

Chicago, Illinois 60602-3368
p. (312) 580-1830 / f. (312) 580-1839
e. service@kulislawltd.com
Pursuant to Illinois Supreme Court Rules 11(b)(6) and 131(d)(1) e-service is accepted solely at service@kulislawltd.com.

SA 36