# United States Court of Appeals

*for the*

# Seventh Circuit

Case No. 25-2441

INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD.,

*Plaintiff-Appellee,*

– v. –

DAN DEE INTERNATIONAL, LLC,

*Defendant-Appellant.*

ON APPEAL FROM A JUDGMENT ENTERED IN THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION, CASE NO. 1:24-CV-04759
HONORABLE FRANKLIN U. VALDERRAMA, DISTRICT COURT JUDGE

## BRIEF FOR PLAINTIFF-APPELLEE

KENNETH HURST
GREGORY E. KULIS
BRIAN M. OROZCO
GREGORY E. KULIS
 & ASSOCIATES, LTD.
Attorneys for Plaintiff-Appellee
134 North LaSalle Street, Suite 444
Chicago, Illinois 60602
(312) 580-1830

CP COUNSEL PRESS    (800) 4-APPEAL • (625057)

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 International Star Registry of Illinois, Ltd.

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Gregory E. Kulis & Associates, Ltd.

_____

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

        N/A

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Kenneth Y. Hurst     Date: 10/03/2025

Attorney's Printed Name:  Kenneth Y. Hurst

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✔]  **No** [ ]

Address:  134 N. LaSalle Street, Suite 444

       Chicago, IL 60602

Phone Number: (312) 580-1830          Fax Number:  (312) 580-1839

E-Mail Address: service@kulislawltd.com; khurst@kulislawltd.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 International Star Registry of Illinois, Ltd.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Gregory E. Kulis & Associates, Ltd.

(3)     If the party, amicus or intervenor is a corporation:

i)          Identify all its parent corporations, if any; and

N/A

ii)         list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Gregory E. Kulis                    Date: 10/03/2025

Attorney's Printed Name:  Gregory E. Kulis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [✔]  **No** [ ]

Address:  134 N. LaSalle Street, Suite 444

 Chicago, IL 60602

Phone Number: (312) 580-1830                    Fax Number:  (312) 580-1839

E-Mail Address: service@kulislawltd.com; gkulis@kulislawltd.com

ii                    rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2441

Short Caption: International Star Registry of Illinois, Ltd. v. Dan Dee International, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
International Star Registry of Illinois, Ltd.

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Gregory E. Kulis & Associates, Ltd.

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　　N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　　N/A

Attorney's Signature: /s/ Brian M. Orozco　　Date: 10/03/2025

Attorney's Printed Name: Brian M. Orozco

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☑　**No** ☐

Address: 134 N. LaSalle Street, Suite 444

Chicago, IL 60602

Phone Number: (312) 580-1830　　Fax Number: (312) 580-1839

E-Mail Address: service@kulislawltd.com; borozco@kulislawltd.com

iii　　rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... v

JURISDICTIONAL STATEMENT ........................................................................... 1

ISSUES PRESENTED FOR REVIEW ....................................................................... 1

STATEMENT OF THE CASE .................................................................................. 1

SUMMARY OF THE ARGUMENT ........................................................................ 4

ARGUMENT ........................................................................................................... 6

     I.      Standard of Review ...................................................................... 6

     II.     The Settlement Required Transfer of a Specific Domain .............. 6

     III.    The Domain Was a Core Component of the Settlement ................ 8

     IV.    Appellant Could Not Cure Its Inability to Perform Through
            Unilateral Substitution ............................................................... 10

     V.     ISR Properly Rejected Appellant's Non-Conforming Substitute ...... 13

     VI.    The Magistrate Judge's Contemporaneous Identification of
            Materiality Supports Affirmance ................................................ 14

     VII.   Appellant's "Equivalent Domain" Theory Does Not Defeat
            Materiality ................................................................................. 15

     VIII.  The District Court's Ruling Is Consistent with *Rubloff* ............... 18

CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Collins v. Educ. Therapy Ctr.,*
    184 F.3d 617 (7th Cir. 1999) ........................................................................ 6

*Rubloff CB Machesney, LLC v. World Novelties, Inc.,*
    363 Ill. App. 3d 558 (2006) ................................................................. *passim*

*Wilson v. Wilson,*
    46 F.3d 660 (7th Cir. 1995) ........................................................................ 6


**Statutes & Other Authorities:**

Restatement (Second) of Contracts § 241 .................................................... 18

Seventh Circuit Rule 28(b) ............................................................................ 1

**JURISDICTIONAL STATEMENT**

Pursuant to Seventh Circuit Rule 28(b), Plaintiff-Appellee states that Defendant-Appellant's jurisdictional statement is complete and correct.

**ISSUES PRESENTED FOR REVIEW**

1. Whether the district court abused its discretion in enforcing the parties' settlement agreement by concluding that Appellant failed to perform a material term requiring transfer of the specifically negotiated domain name *wishuponastargift.com*.

2. Whether Appellant's inability to deliver a uniquely identified intellectual property asset may be excused by its unilateral offer of a substitute not contemplated by the settlement agreement.

**STATEMENT OF THE CASE**

This appeal arises from the district court's enforcement of a settlement agreement between Plaintiff-Appellee International Star Registry of Illinois, Ltd. ("ISR") and Defendant-Appellant Dan Dee International, LLC. ISR moved to enforce the agreement after Appellant failed to transfer ownership of the domain *wishuponastargift.com* as required. The district court referred the motion to the magistrate judge, who issued a Report and Recommendation recommending enforcement of the settlement agreement based on Appellant's failure to transfer a

material term. (R. 57). The district court overruled Appellant's objections, adopted the Report and Recommendation, grant ISR's motion to enforce the settlement agreement, and dismissed the case on July 18, 2025. (R. 72; R. 77). Appellant now appeals.

On December 17, 2024, the parties reached a settlement during a court-supervised settlement conference. The magistrate judge contemporaneously documented that the parties had agreed upon material terms, including Appellant's obligation to transfer ownership of the domain wishuponastargift.com to ISR. In the Report and Recommendation, the magistrate judge wrote:

> "The parties reached a settlement on December 17, 2024. On December 17, 2024, during the parties' settlement conference, the parties agreed upon material terms of the settlement, which were specifically documented by Judge Holleb Hotaling as material in a written communication following the settlement conference." (R. 57 at ¶ 1(a)).

The parties subsequently executed a written Settlement Agreement incorporating those terms. The agreement expressly provided:

> "Defendant hereby transfers and assigns all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code, to Plaintiff. Defendant hereby transfers and assigns all right, title, and interest to the trademarks reflected in the License Agreement dated October 1, 2021, attached to the Complaint as Exhibit I, including, but not limited to, WISH UPON A STAR (U.S. Serial number 90613521), to Plaintiff. Defendant shall send all artwork, art files, promotional materials, and designs for the packaging and tagging of the Licensed Product (as defined in the License Agreement) to Plaintiff. Defendant acknowledges that the compliance paperwork provided in the Lawsuit is a true and accurate copy. All the aforementioned artwork, art files, promotional materials, and designs shall be assigned and delivered to Plaintiff within 30 days of the

execution of this Agreement. Plaintiff shall be responsible for updating the ownership of the trademarks with the U.S. Patent and Trademark Office."
(R. 43 at Ex. A).

The domain wishuponastargift.com was historically associated with the product Wish Upon a Star and was tied to the existing packaging, QR codes, and related marketing materials. (R. 43 at ¶¶ 7–10).

Following execution of the Settlement Agreement, Appellant represented that the transfer of wishuponastargift.com was underway. ISR entered the agreement with the understanding that Appellant possessed the agreed domain and could complete the transfer as required. ISR did not learn until February 2025, after the contractual transfer deadline had passed, that Appellant no longer possessed the domain because it had been acquired by a third party. (R. 62 at 2–3).

After ISR moved to enforce the agreement with the court, in an effort to compel Appellant to transfer the agreed upon domain, wishuponastargift.com, Appellant attempted to substitute an alternative domain name without any notice or explanation. ISR did not accept that substitution and maintained that the Settlement Agreement required transfer of the specifically identified domain. (R. 58 at ¶¶ 9–12).

ISR moved to enforce the Settlement Agreement based on Appellant's failure to transfer the agreed domain amongst other assets that had not been transferred by the deadline. (R. 43). The district court referred the motion to the magistrate judge, who issued a Report and Recommendation concluding that Appellant's inability to

transfer wishuponastargift.com constituted a material term of the Settlement Agreement. (R. 46; R. 57).

Appellant filed objections through a Motion to Modify the Report and Recommendation, and ISR Responded. (R. 60, 62). The district court independently reviewed the magistrate judge's findings and denied Appellant's motion after consideration of the objections. (R. 72). The district court subsequently entered a dismissal on July 18, 2025, since it granted ISR's motion to enforce settlement, and a status report was not filed disagreeing with the Court's July 7, 2025 minute entry. (R. 77).

Finally, much of Appellant's background narrative is neither germane to the enforcement of the settlement agreement nor supported by the record.

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion in enforcing the parties' settlement agreement, concluding that Appellant failed to perform a material term, and granting ISR's motion to compel. The settlement required Appellant to transfer ownership of a specifically identified domain name, wishuponastargift.com, as a material component of a forward-looking commercial arrangement designed to enable ISR to relaunch and monetize the Wish Upon a Star product line. Appellant concedes that it did not possess the domain at the time performance was due and therefore could not transfer it as required.

Appellant's inability to perform was not cured by its unilateral domain substitution. The agreement required transfer of the negotiated asset, not an alternative. ISR was entitled to insist upon compliance with the settlement's express terms and was not obligated to accept non-conforming performance. The substitute domain was not part of the parties' prior relationship or settlement expectations and was introduced only after Appellant failed to deliver the agreed domain. The district court correctly rejected Appellant's contention that the two domains were interchangeable and found Appellant's assertions that ISR could easily replace its associated inventory to be conclusory and unpersuasive.

The magistrate judge contemporaneously documented the transfer of wishuponastargift.com as a material term at the time the settlement was reached, and the district court independently reviewed and adopted that determination after de novo consideration. The court's reasoning aligns with the materiality framework described in *Rubloff CB Machesney, LLC v. World Novelties, Inc.*, because ISR was deprived of a core benefit of the settlement and could not be made whole through substitute performance or monetary adjustments.

In short, Appellant failed to deliver a uniquely identified contractual asset central to the parties' negotiated resolution. The record supports the district court's conclusion that Appellant failed to perform a material term of the settlement agreement, and Appellant's attempt to recast its post-settlement substitute as

equivalent performance does not alter that analysis. The order enforcing the settlement agreement should therefore be affirmed.

Appellant's arguments repeatedly attempt to reframe this matter as a traditional breach-of-contract dispute. It is not. The district court did not adjudicate a breach claim or award breach remedies. Rather, it enforced the parties' settlement agreement by compelling performance of a material term that Appellant concededly could not satisfy. This appeal therefore concerns enforcement of a settlement, not a damages-based breach action, and Appellant's effort to recast the issue under breach doctrines does not alter the district court's discretionary authority to enforce the agreement as written.

## ARGUMENT

### I. Standard of Review

A district court's decision to enforce a settlement agreement is reviewed for abuse of discretion. See *Collins v. Educ. Therapy Ctr.*, 184 F.3d 617, 620 (7th Cir. 1999); *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995).

### II. The Settlement Required Transfer of a Specific Domain

Appellant's briefing rests on a threshold mischaracterization of the proceedings below. The district court did not enter judgment on a breach claim; it enforced the parties' settlement agreement by granting ISR's motion to compel performance of a material term. (R. 57; R. 72). The question on appeal is therefore not

whether breach damages were appropriate, but whether the district court abused its discretion in enforcing the settlement when Appellant could not deliver the specifically negotiated asset it agreed to transfer.

The issue presented on appeal concerns ownership, not functionality. The parties' Settlement Agreement required Appellant to transfer a specifically identified domain name: *wishuponastargift.com*. Paragraph 3 of the Settlement Agreement provides that "Defendant hereby transfers and assigns all right, title, and interest to the domain, website content, URL, wishuponastargift.com, and associated QR Code, to Plaintiff…" (R. 43 at ¶ 3). This provision imposed an obligation to transfer that precise domain and did not contemplate substitute performance in the form of a similar domain. The Settlement Agreement was not merely an agreement to dismiss litigation; it was a forward-looking commercial arrangement designed to rectify Appellant's prior actions and enable ISR to relaunch and monetize the Wish Upon a Star product line. (R. 43 at ¶¶ 7–10).

The record further reflects that this term was expressly negotiated and documented as material at the time the settlement was reached. As set forth in the magistrate judge's Report and Recommendation, "[o]n December 17, 2024, during the parties' settlement conference, the parties agreed upon material terms of the settlement, which were specifically documented by Judge Holleb Hotaling as material in a written communication following the settlement conference." (R. 57 at ¶ 1(a)). The

written Settlement Agreement executed on December 24, 2024 incorporated those material terms. (R. 43; R. 57).

Appellant's failure to maintain ownership of the domain and resulting inability to transfer the domain, whether inadvertent or otherwise, does not alter the materiality analysis. The settlement required performance, not merely an attempt at performance. The loss of the agreed domain, regardless of intent, left Appellant unable to deliver the asset the parties specifically negotiated.

Appellant does not dispute that it failed to transfer the required domain. Instead, Appellant acknowledges that it no longer possessed ownership of *wishuponastargift.com* at the time performance was due because the domain had been acquired by a third party. (R. 62 at 2–3).

Under these circumstances, Appellant's failure to transfer the specifically bargained-for domain constitutes nonperformance of a material contractual obligation, not a minor deviation capable of cure through unilateral substitution.

### III. The Domain Was a Core Component of the Settlement

The required domain was not an incidental component of the parties' agreement; rather, it was a central element of the commercial framework the settlement was designed to restore. The Settlement Agreement obligated Appellant to transfer the domain precisely because it was integrated into ISR's product ecosystem and formed part of the consumer-facing experience tied to the licensed product. (R.

43 at ¶¶ 3, 7–10). As reflected in ISR's Motion to Enforce, ISR had already undertaken substantial steps to relaunch the product, including securing manufacturing pricing and engaging with potential retail partners. ISR had also secured an opportunity to present the product to QVC for 2025 programming, but could not represent that it possessed full control of the brand and associated digital assets absent transfer of the agreed domain. (R. 43 at ¶ 10). The domain also operated as the authentication and redemption mechanism through which purchasers accessed ISR's star-naming services. (R. 43 at ¶¶ 7–10).

The domain was likewise linked to Wish Upon A Star's existing packaging, QR codes, and related marketing materials. (R. 43 at ¶¶ 7–10). Appellant suggests that ISR nonetheless received the economic benefit of the settlement through the transfer of payment, trademarks, and related materials. That framing overlooks the operational role of the agreed domain within the settlement structure. The domain was not ancillary to those assets; it was the mechanism through which they could be deployed. Ownership of the trademarks, artwork, and product files did not enable ISR to relaunch or commercialize the product absent control of the consumer-facing domain that authenticated and connected purchasers to ISR's services. (R. 43 at ¶¶ 7–10). Without that link, ISR received components of a product ecosystem, but not the operational capability the settlement was designed to restore.

ISR further maintained approximately $180,000 in retail inventory associated

with the agreed domain, the usability and commercial viability of which depended upon ISR's ownership and control of that specific digital asset. (R. 62 at 3). Without ownership of the agreed domain, ISR could not deploy the product in the manner contemplated by the settlement or maintain continuity in branding and consumer interaction.

Appellant's failure to transfer the domain therefore impaired ISR's ability to preserve marketing continuity, sustain consumer trust, and maintain brand integrity in connection with the product relaunch. In doing so, Appellant's nonperformance undermined the commercial purpose of the settlement and deprived ISR of a core benefit for which it had expressly bargained.

**IV. Appellant Could Not Cure Its Inability to Perform Through Unilateral Substitution**

Appellant's failure was not a matter of delayed performance or minor deviation; it was an inability to perform a specific contractual obligation. Appellant acknowledges that it no longer possessed ownership of *wishuponastargift.com* at the time performance was due because the domain had been acquired by a third party and remained outside Appellant's control. (R. 62 at 2–3). As a result, Appellant could not transfer the domain as required by the Settlement Agreement. (R. 43 at ¶ 3).

The record further reflects that ISR entered the Settlement Agreement with the understanding that Appellant possessed the agreed domain and could transfer it

within the contractual timeframe. (R. 43 at ¶¶ 7–10). Following execution of the agreement, Appellant continued to represent that the transfer was in progress. (R. 62 at 2). It was not until February 2025, after the transfer deadline had passed, and after ISR had moved to enforce the settlement agreement with the court, that ISR was informed the domain was no longer under Appellant's control and had been acquired by a third party. (R. 62 at 2–3). This sequence underscores that ISR settled in reliance on Appellant's asserted ability to perform, and that the failure to transfer was not a technical lapse but an inability to deliver the bargained-for asset.

In response, Appellant attempted to replace wishuponastargift.com with a substitute domain, *wishuponastargifts.com*, as an alternative form of performance. (R. 58 at ¶¶ 9–12). However, the Settlement Agreement did not authorize substitution, nor did ISR agree to any modification of the bargained-for terms. (R. 43 at ¶ 3). The obligation was to transfer ownership of the specifically identified domain, not to provide a similar digital asset.

Because Appellant lacked ownership of the domain at the time performance was required, it was incapable of fulfilling its contractual obligation. (R. 62 at 2–3). The substitute domain therefore did not constitute performance and could not remedy Appellant's failure to transfer the asset expressly required by the Settlement Agreement. (R. 58 at ¶¶ 9–12).

Appellant further contends that ISR could have been made whole through

updated packaging, replacement hangtags, or additional monetary compensation. (See R. 60). That argument misconstrues the nature of the agreed performance. The settlement required transfer of a unique digital asset, not merely the mitigation of downstream marketing consequences. (R. 43 at ¶¶ 3, 7–10). Monetary or logistical adjustments could not restore ISR's ownership of the agreed domain or replicate its exclusivity. Because compensation cannot substitute for control of a specific, consumer-facing domain, Appellant's proposed cure did not place ISR in the position contemplated by the settlement.

Appellant's suggestion that ISR could simply deploy the settlement payment to recreate or redevelop the intellectual property it agreed to transfer underscores the materiality of the promised assets. The $140,000 payment was not consideration for ISR to independently rebuild the transferred rights; it was part of a broader settlement resolving claims and securing releases in exchange for both monetary payment and delivery of the agreed intellectual property. Requiring ISR to use settlement proceeds to recreate the very assets Appellant promised to deliver would effectively convert consideration for the release into funding for substitute performance, further confirming that the transferred intellectual property, including the agreed domain, was a material component of the parties' negotiated resolution.

## V. ISR Properly Rejected Appellant's Non-Conforming Substitute

Appellant's attempt to characterize ISR's rejection of the substitute domain as unreasonable is unsupported by the record. ISR never accepted *wishuponastargifts.com* as a replacement for the agreed-upon domain and expressly rejected the notion that a substitute could satisfy Appellant's obligations under the Settlement Agreement. (R. 58 at ¶¶ 9–12). ISR received no confirmation that ownership of the substitute domain had been transferred, and ISR made clear that it did not consider the substitute domain an acceptable fulfillment of the parties' agreement. (R. 58 at ¶¶ 9–12).

ISR was entitled to insist upon compliance with the Settlement Agreement's terms, particularly where those terms involved the transfer of a specifically identified intellectual property asset. (R. 43 at ¶ 3). ISR's refusal to accept the substitute domain did not create or contribute to Appellant's nonperformance; rather, it reflected ISR's exercise of its contractual right to receive the performance for which it had bargained. (R. 43 at ¶ 3; R. 58 at ¶¶ 9–12).

Appellant's suggestion that ISR frustrated the transfer of the substitute domain is inconsistent with the record. ISR did not obstruct performance; it declined to accept a substitute that was never contemplated by the agreement. (R. 58 at ¶¶ 9–12). That decision was consistent with the Settlement Agreement's express terms and does not mitigate Appellant's failure to transfer the required domain. (R. 43 at ¶ 3; R. 62 at 2–3).

**VI. The Magistrate Judge's Contemporaneous Identification of Materiality Supports Affirmance**

This is not a case in which materiality is being assessed solely through hindsight. At the time the settlement was reached, the magistrate judge expressly documented the parties' agreed-upon material terms. As reflected in the Report and Recommendation, the magistrate judge identified the agreed settlement terms as material at the time of the December 17, 2024 settlement conference. (R. 57 at ¶ 1(a)).

The requirement that Appellant transfer ownership of *wishuponastargift.com* was among those material terms and was later incorporated into the written Settlement Agreement executed on December 24, 2024. (R. 43 at ¶ 3; R. 57 at ¶ 1(a)). The magistrate judge's contemporaneous identification of this obligation as material underscores its central role in the settlement framework and distinguishes this matter from cases involving minor or technical deviations from agreed performance.

In adopting the Report and Recommendation, the district court relied upon a record demonstrating that the transfer of the specified domain was not peripheral to the agreement but instead constituted a core component of the negotiated resolution. (R. 57; R. 72). The magistrate judge's documentation of the parties' material terms at the time of settlement provides a concrete evidentiary basis for the district court's determination that Appellant failed to perform a material term of the settlement agreement. (R. 57).

Following issuance of the Report and Recommendation, the district court independently reviewed the magistrate judge's findings and adopted them after de novo consideration. (R. 72). This layered review further confirms that the materiality determination was not the product of a cursory or implicit analysis, but instead reflected the district court's independent evaluation of the record and the parties' contractual expectations.

**VII. Appellant's "Equivalent Domain" Theory Does Not Defeat Materiality**

Appellant's argument that the substitute domain constituted an "equivalent" form of performance does not alter the material nature of its breach. The Settlement Agreement required the transfer of a specifically identified domain name, not a similar alternative. (R. 43 at ¶ 3). As discussed, Appellant was unable to transfer the agreed-upon domain because it no longer possessed ownership of *wishuponastargift.com*. (R. 62 at 2–3). Appellant's subsequent attempt to replace it with a different domain did not satisfy the contractual obligation it had undertaken. (R. 58 at ¶¶ 9–12).

The substitute domain also was not part of the parties' original licensing relationship or settlement expectations. The record reflects that ISR's historical dealings with Appellant were tied to wishuponastargift.com, which was expressly identified in the Settlement Agreement as the domain to be transferred. (R. 43 at ¶ 3). ISR later clarified that wishuponastargift**s**.com was never accepted as a substitute and

was materially different from the negotiated asset. (R. 58 at ¶¶ 9–12). Instead, the plural domain was introduced only after Appellant was unable to transfer the agreed domain and therefore did not form part of the parties' settled expectations at the time the agreement was executed. (R. 62 at 2–3). The substitute therefore did not reflect continuity of an existing component of the parties' relationship, but rather a later-offered alternative in place of the domain the parties had specifically negotiated.

This distinction bears directly on the materiality analysis described in *Rubloff*. Because the plural domain was not part of the parties' historical dealings or settlement expectations, its later proposal did not provide ISR with the benefit it reasonably expected under the agreement. *See Rubloff CB Machesney, LLC v. World Novelties, Inc.*, 363 Ill. App. 3d 558, 563 (2006). The inability to deliver the agreed domain, and the substitution of a newly introduced alternative, therefore supported the district court's determination that ISR did not receive the performance for which it bargained.

Ownership of a specific domain is exclusive and cannot be replicated through functional similarity. The district court expressly rejected Appellant's contention that there was "no conceivable difference" between wishuponastargift.com and wishuponastargift**s**.com. In adopting the Report and Recommendation, the court agreed that even a one-letter difference in a domain name can materially affect ownership, value, and consumer access, and further noted ISR's showing that it held approximately $180,000 in retail inventory rendered unsellable due to the

unavailability of the agreed domain. (R. 72 at 2–3). The court found Appellant's assertions that the domains were interchangeable and that ISR's inventory could "easily be replaced" to be conclusory and unpersuasive. (R. 72 at 2). Even slight variations can materially affect consumer perception, branding continuity, and the integrity of digital marketing efforts. ISR demonstrated that the agreed-upon domain was tied to its existing product ecosystem and inventory and that the absence of that domain impaired the product's commercial deployment. (R. 62 at 3). The proposed substitute therefore did not place ISR in the position contemplated by the settlement.

Cases involving technical or functional substitutions are inapposite here. Those cases typically involve interchangeable materials or performance variations that do not affect the core purpose of the agreement. Here, by contrast, the inability to transfer the agreed domain deprived ISR of a specifically negotiated asset integral to the settlement's commercial framework. (R. 43 at ¶¶ 3, 7–10; R. 57). The district court concluded that Appellant failed to perform a material term of the settlement agreement notwithstanding Appellant's offer of a substitute. (R. 72).

Appellant further suggests that ISR's subsequent filing of a separate action reflects an effort to obtain duplicative recovery. That characterization does not alter the materiality analysis presented here. The later-filed action, which has been stayed by the district court, asserts claims arising from distinct pre- and post-settlement conduct, including negligent misrepresentation and interference occurring after

execution of the Settlement Agreement. The existence of those claims does not expand the remedies sought for enforcement of the settlement; it reflects separate allegations that Appellant's conduct impaired ISR's prospective business relationships and commercialization efforts. Whether those claims ultimately proceed is not before this Court, and their pendency does not transform ISR's effort to enforce the settlement into a claim for double recovery.

### VIII. The District Court's Ruling Is Consistent with *Rubloff*

Appellant's reliance on *Rubloff* is misplaced because this appeal concerns enforcement of a settlement agreement, not a damages-based breach claim. Nonetheless, the district court's reasoning aligns with the materiality considerations described in *Rubloff*. Appellant argues that reversal is warranted because the district court did not explicitly march through each factor identified in *Rubloff CB Machesney, LLC v. World Novelties, Inc.*, 363 Ill. App. 3d 558 (2006). That contention misstates both *Rubloff* and Illinois law.

*Rubloff* does not require a formal checklist analysis. Rather, it explains that "[t]he determination of the materiality of a breach… must turn on the facts of each case." *Rubloff*, 363 Ill. App. 3d at 563. While the court identified several considerations drawn from Restatement (Second) of Contracts § 241, it emphasized that those factors are tools for evaluating whether the injured party was deprived of the benefit it reasonably expected.

Under *Rubloff*, courts consider:

> "(1) the extent to which the injured party will be deprived of the benefit that he reasonably expected; (2) the extent to which the injured party can be adequately compensated…; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood that the party failing to perform… will cure…; and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing." *Id.* at 563–64.

The district court's reasoning therefore falls squarely within the framework *Rubloff* contemplates.

Nor does enforcement of the settlement impose the type of inequitable forfeiture *Rubloff* contemplates. Appellant was not deprived of a bargained-for benefit through an unforeseen technicality; rather, it failed to maintain and deliver a specifically negotiated asset it represented it possessed and it had agreed to transfer as part of the settlement. The consequence of that failure was the loss of the release conditioned upon performance, not the forfeiture of an independent contractual entitlement.

Appellant invokes material breach doctrine to argue against enforcement, but *Rubloff* does not convert an enforcement decision into a damages analysis. The district court evaluated materiality only to determine whether the agreed term warranted enforcement, not to award breach remedies.

First, *Rubloff* places primary emphasis on whether the injured party was deprived of the benefit it reasonably expected. In that case, the court held the breach

material because the lessor "was largely deprived of the benefit it reasonably expected." *Id.* at 561. Here, the district court likewise found that ISR did not receive the specifically negotiated domain that was associated with the Wish Upon A Star Product. The absence of that asset impaired ISR's ability to deploy its inventory and relaunch its product ecosystem, thereby depriving ISR of the core benefit of the settlement.

Second, *Rubloff* instructs courts to consider whether compensation could adequately substitute for performance. The court explained that monetary remedies may fail where uncertainty in performance undermines contractual expectations, noting that "an essential purpose of a contract between commercial parties is actual performance and they do not bargain merely for a promise… plus the right to win a lawsuit." *Id.* at 567. The same logic applies here. A substitute domain or additional funds could not replicate ownership of a unique digital asset that served as the authentication and redemption mechanism for ISR's product.

Third, *Rubloff* recognizes that cure is relevant but not dispositive. There, even though the breaching party attempted to cure, the court still found material breach. *Id.* at 568. Likewise, Appellant's offer of a substitute domain did not alter the fact that it was incapable of transferring the agreed-upon asset, which remained outside its control.

Finally, *Rubloff* underscores that materiality analysis must account for

commercial expectations and the destabilizing effect of uncertainty in performance. *Id.* at 564. Appellant's inability to deliver the negotiated domain introduced precisely that uncertainty into ISR's relaunch efforts.

In short, *Rubloff* supports, rather than undermines, the district court's conclusion. The court was not required to recite each factor mechanically, and its findings reflect consideration of the very concerns *Rubloff* identifies as central to materiality.

## CONCLUSION

The Settlement Agreement required Appellant to transfer ownership of a specifically identified domain name as a material term of the parties' Settlement Agreement. Although they claimed ownership at the time of the settlement agreement, Appellant did not possess the domain at the time performance was due and was therefore unable to transfer it as required. The subsequent effort to substitute an alternative domain did not satisfy Appellant's contractual obligation and did not cure its nonperformance.

The magistrate judge contemporaneously documented the transfer of *wishuponastargift.com* as a material component of the settlement, and the district court correctly determined that Appellant's failure to deliver that asset warranted enforcement of the settlement agreement through ISR's motion to compel. Because the record demonstrates that ISR was deprived of a core benefit of the settlement, the

enforcement order should be affirmed.

ISR further respectfully requests that the Court award its reasonable attorney's fees and costs incurred in this appeal pursuant to the parties' Settlement Agreement, and remand to the district court for determination of the appropriate amount.

February 17, 2026

**Respectfully submitted,**

s/ Gregory E. Kulis
 Gregory E. Kulis
Gregory E. Kulis & Associates, Ltd.
134 N. LaSalle Street, Suite 444
Chicago, IL 60602
(312) 580-1830

Kenneth Y. Hurst
Gregory E. Kulis &
Associates Ltd.
134 N. LaSalle Street, Suite
444 Chicago, IL 60602
(312) 580-1830

*Counsel for Appellee*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 4,740 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font.

Dated: February 17, 2026

/s/ Gregory E. Kulis
Gregory E. Kulis
*Attorney for Appellee*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2026 the Brief of Plaintiff-Appellee was filed

with the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the appellate CM/ECF system. I certify that all participants in the case

are registered CM/ECF users and that service will be accomplished by the appellate

CM/ECF system.

/s/ Gregory E. Kulis
Gregory E. Kulis
*Attorney for Appellee*